[Civ. No. 16343. First Dist., Div. Two. Feb. 27, 1956.]

LEO ZWEIG et al., Appellants, v. FIREMAN'S FUND INDEMNITY COMPANY (a Corporation) et al., Respondents.

ROBERT E. ALLEN et al., Appellants, v. LEO ZWEIG et al., Respondents.

Boyd Oliver for Appellants and Respondents Zweig et al.

Millington & Dell'Ergo for Appellants Allen et al., and Respondents Fireman's Fund Indemnity Co.

DOOLING, J.—Cross-appeals by plaintiffs-appellants Leo Zweig and Celia Zweig and by plaintiffs-appellants Robert E. Allen and William C. Allen, doing business as Allen Bros., from a judgment of the superior court entered in actions Number 57770 and Number 57201, consolidated for trial, that the parties to the said actions should take nothing.

Appellants Allen, general contractors, brought an action to foreclose a contractors claim of lien against Leo and Celia Zweig with whom they had contracted for the construction of a home. The Zweigs answered and set up a counterclaim. They then filed a complaint on a contractor's bond joining the Allens and Fireman's Fund Indemnity Company, surety on the building contract between the Allens and themselves, as defendants. These two actions were consolidated for trial.

The building contract out of which these actions arose was entered into on October 6, 1950, between Leo Zweig and Celia Zweig, his wife, as owners, and Robert E. Allen and William C. Allen, copartners doing business as Allen Bros., as contractors and builders. The Allens were to construct a home for the Zweigs on a lot owned by the latter in San Mateo. The labor and materials were to be supplied by the contractors (Allens) and the work was to be completed within 75 working

days after October 23, 1950, the day set for work to begin. The contract price was $15,475 to be paid in installments as the work progressed.

On October 9, 1950, a completion bond conditioned on the performance of the contract in accord with the plans and specifications was entered into by Fireman's Fund Indemnity Company and the Allen Bros. and delivered to the Zweigs.

The Allens commenced construction of the house about October 23, 1950, as was agreed in the contract. Mr. Zweig apparently began to notice certain deviations from the plans and specifications and certain imperfections in the material being used by the contractors rather early in the building process. He testified that he made known to Robert Allen, one of the contractors, his objections to the way the work was being done. He stated that he made these objections both orally and in writing to the contractors as he became aware of the imperfections and deviations, as it was his understanding of the contract that it would be necessary for him to call such matters to the Allens' attention before the work progressed beyond the phase of construction involving the particular objections. As work on the house progressed Zweig's objections to the performance of the contractors multiplied. A series of letters and other communications relative to these complaints were exchanged between the parties. An arbitration of these differences as provided in the contract was attempted by the parties but proved ineffectual. Work on the house by the Allens ceased about the end of January, 1951, or the middle of February, 1951. By this time three progress payments had been made by the owners to the contractors in an amount of $9,285. The house was later completed by another contractor, William C. Smith, in February of 1952.

The Zweigs, owners, sought to recover in their action $2,819 which they alleged was the cost to them of completion of the house in excess of the original contract price plus "special damages" (comprising 50 separate items) in the sum of $6,868.89. The Allens, contractors, sought to recover a judgment of $4,472.60 and to impose a lien on the property for this amount alleging that this sum represented the value of labor and materials furnished by them pursuant to the contract for which they had received no compensation.

The court made the following findings:

"VII

"On or about October 23, 1950, defendants Allen Bros., pursuant to said contract, started the construction work

provided for in said contract, but failed, neglected and refused to furnish materials and perform the labor in compliance with the said contract and in accordance with said plans and specifications or within the time prescribed in said contract, but in violation of said contract and said plans and specifications said defendants, Allen Bros., furnished certain materials and labor inferior in quality and standard to that called for and required by said contract and plans and specifications, and said defendants Allen Bros. failed, neglected and refused to follow said contract and plans and specifications and failed, neglected and refused to construct said dwelling house and garage in compliance therewith, and failed, neglected and refused to furnish the quality and quantity of materials required in said contract and there was a material departure from the plans and specifications in the construction of said dwelling house.

## "VIII

"That the acts of the plaintiff LEO ZWEIG, in constantly criticizing the work of the contractors and in demanding that work be stopped until the details of the plans and specifications were complied with in accordance with his interpretations, constituted an unwarranted and unreasonable interference with the Allen Bros. in their performance of the contract.

## "IX

"That the unskilled performance by plaintiff LEO ZWEIG of the unauthorized work of applying a certain priming preparation to the outside window frames and the installation of insulating materials between the ceiling joists in said house contributed to his damages.

## "X

"That on the 19th day of January, 1951, the plaintiffs, LEO and CELIA ZWEIG, filed and recorded a Declaration of Homestead on said property in the office of the County Recorder, San Mateo County, California."

From the above findings the court concluded that the Allens were not entitled to recover any further sums under the contract because of their material departure from the plans and specifications; that the Allens were prevented in the performance of the building contract by the unwarranted and unreasonable interference of Leo Zweig; that the unskilled performance of unauthorized work on the building by Leo Zweig contributed to his damages and that the Allens and Fireman's Fund Indemnity Company were not responsible

for any loss he may have sustained; that the filing and record-
ing of a homestead on the premises by the Zweigs constituted
an acceptance of the Allens' work; that the Zweigs were en-
titled to recover nothing from the Allens or Fireman's Fund
Indemnity Company in their action.

We confess to an inability to determine from the findings,
in the very general way in which they are framed, how the
court could reach the conclusion that it did that neither set of
parties was entitled to any recovery. If the contractors, as
found, departed from their contract in substantial particulars
not only were they not entitled to recover on their contract,
but the owners were certainly entitled to insist that the con-
tractors perform the contract according to its terms and rec-
tify the deviations from the contract to make the building
conform to the plans and specifications. On the other hand if
the interference of the owners prevented the contractors from
performing according to the terms, resulting in the substantial
departures from the terms found by the court, that would
seem to excuse these substantial defects.

Courts should frame their findings with sufficient
definiteness to enable the appellants to point out to an appel-
late court intelligibly particulars in which they are not sup-
ported by the evidence, the findings should not be contradictory
on material issues, and the court should find on all material
issues raised by the pleadings. (*Andrews* v. *Cunningham*, 105
Cal.App.2d 525, 528-529 [233 P.2d 563].)

The evidence, which was sharply conflicting in most
particulars, covered a host of claimed deviations from the
contract, many of which were minor. We single out three
which in our judgment would support the finding that the
contractors were guilty of substantial breaches of their con-
tracts, without determining that there are not others. 1. The
concrete foundations were not carried into the soil to the depth
required by the plans; 2. one supporting pier under the center
girder was omitted thus resulting in a greater space between
piers and a greater danger of future sagging; 3. the siding
on the house was not clear-heart redwood as required. It
is impossible from the findings to determine whether the trial
court found any one of these omissions to be a substantial
departure from the contract or not. As to Number 1 the con-
tractors produced evidence that where the foundation did not
go to the depth specified it was on solid rock and it was good
practice not to blast out the rock but to pour the foundation

on top of it. Did the trial court accept or reject this testimony? Did the trial court find that this was a substantial departure or not? As to No. 2 there was evidence for the contractors that the omission of one pier would not weaken the structure. The same questions are left open by the findings. As to Number 3 it was established that clear-heart redwood as called for by the contract should have no knots and no sap-wood, which is light in color and will show through a stain. (The contract called for a grey stain on the exterior.) The owners' evidence was that the siding was not clear-heart redwood and contained many knots and much sap-wood and that as a result the siding had to be painted to conceal these since they would have shown through the stain. The contractors' evidence was that the siding, with the exception of two or three boards, which could have been easily replaced, was clear-heart redwood. The same questions are again left open by the findings.

A principal dispute between the parties had to do with this siding and whether or not the owners were justified in insisting that it be rectified before the work proceeded. The findings leave this, as well as the other issues discussed and many more, in such a state that we cannot determine how the court found on them. Without more specific findings we are at a complete loss to determine the actual issues on which the court based its judgment or its finding that the contractors were guilty of substantial and material departures from the contract.

If, as we have suggested, there were substantial failures of compliance the contractors would not be entitled to recover, and the owners would be within their rights in insisting on such compliance before the work proceeded to a point where the compliance would be impossible. (*Underhill* v. *Hoag,* 91 Cal.App.2d 185, 188 [204 P.2d 354] ; *Morel* v. *Simonian,* 103 Cal.App. 490, 494-495 [284 P. 694] ; 17 C.J.S., p. 1089.) It is undisputed that the stoppage of the work was primarily due to the dispute over the siding. If the court should find that there was a substantial failure of performance in this particular the owners' insistence that it be rectified was justified. We cannot tell from the findings how the court determined this issue. And if the other two defects discussed were substantial they could hardly be rectified except at unreasonable cost in an almost finished building. The owners' minor complaints and suggestions would thereafter become unimportant in view of the contractors' fundamental departures from the contract

which were practically irreparable. The court found substantial departures from the contract. As to these, of course, the owners' complaints were justified. But what were these substantial departures and hence which complaints were justified and which were not? We look in vain to the findings for an answer. Since many of the complaints concerned trivial matters and could not have substantially interfered with the completion of the building this becomes important.

Our conclusion is that the general findings of failure of substantial performance on the one hand and unjustified interference of performance on the other are apparently hopelessly conflicting and in the absence of more specific findings do not support the judgment.

The unskilled work by plaintiff Zweig did not excuse or prevent the performance of the contract but at most caused some delay and inconvenience to the contractors and some possible damage to the building. This could only go to mitigate damages and standing alone could not defeat all recovery by the owners. This covers finding IX.

The declaration of homestead on the property referred to in finding X could not constitute an acceptance. The parties continued their efforts to reach an agreement including the unsuccessful arbitration long after January 19, 1951, and it is too clear for argument that the owners made it abundantly plain to the contractors that they were dissatisfied with the work done and wanted it corrected. The evidence shows that the owners were not accepting the unfinished home on that date and the contractors knew that they were not accepting it. (*Machinery & Electrical Co.* v. *Young Men's Christian Assn.*, 22 Cal.App. 416 [134 P. 724].)

The same may be said of a telegram of January 12, 1951, which the contractors now seek to treat as a stop notice. The negotiations between the parties dragged on for months thereafter, neither parties treating the contract as at an end by reason of this telegram.

Finally the contractors claim that no five-day notice to complete was given them as required by the contract. The court made no finding on this subject and the contractors having refused for many months to finish the building the court might well find that they had abondoned the contract.

Judgment reversed.

Nourse, P. J., and Kaufman, J., concurred.