[Civ. No. 24007. Second Dist., Div. Two. May 13, 1960.]

RALPH V. SKARDA, Respondent, v. MALAN VIBRATOR COMPANY (a Partnership) et al., Appellants.

Littlejohn, Callister & McNabb and E. Talbot Callister for Appellants.

Howard W. Hunter for Respondent.

RICHARDS, J. pro tem.*—Defendants appeal from a judgment in favor of the plaintiff in an action to recover an alleged indebtedness for materials furnished and labor performed by the plaintiff for the defendants.

Plaintiff's amended complaint alleged three causes of action, each for an identical amount of $5,471.96: (1) open book account; (2) general assumpsit; and, (3) account stated. Defendants cross-complained for damages in the sum of $1,192 proximately resulting from plaintiff's breach of warranty to manufacture certain vibrators free from defects of material and workmanship.

The plaintiff owns and operates a machine shop. The defendants are engaged in the business of leasing concrete vibrators. In August, 1954, pursuant to a written agreement, the defendants ordered and the plaintiff manufactured vibrators according to plans and specifications provided by the defendants. Similar orders thereafter followed. In October, 1955, the plaintiff was engaged in filling the third purchase order for 30 vibrators at $500 each when a question arose as to whether 15 upper "headers" and 16 lower "headers" were of the requisite hardness. A "header" is one of the parts of such vibrator. It was decided to have the headers rehardened, which was done. The additional hardening process caused the headers to shrink and it was then decided to have them chrome-plated to restore them to the required size. In the process of electrolysis, a portion of the copper weld which held the component parts of the headers together eroded. The plaintiff thereupon manufactured replacement headers. The parties terminated their relationship in July, 1956, at which time the plaintiff invoiced the defendants for $1,203.07 for the cost of attempting to salvage the 31 defective headers, and $1,698.28 for the manufacture of the replacement headers. These and other claimed items were not paid by the defendants and the

---

*Assigned by Chairman of Judicial Council.

plaintiff kept possession of both the salvaged headers and the replacement headers notwithstanding the fact that defendants had paid plaintiff in full for the headers which turned out to be defective.

The court found, *inter alia,* on the plaintiff's complaint that the plaintiff agreed to manufacture concrete vibrators for the defendants according to plans and specifications; that the plaintiff agreed to replace or correct defective parts without cost to defendants and that the plaintiff expressly warranted the vibrators to be free from defects of material and workmanship.

The findings under major attack are that the plaintiff spent the sum of $1,203.27 to salvage certain headers as described in Invoice 388; that the plaintiff manufactured certain headers to replace the defective headers as described in Invoice 379; and that "[t]he parties are to bear said expense equally, and, therefore, there was due and owing to plaintiff from defendants . . . one-half of the total sum on Invoices 379 and 388, being the amount of $1,450.78" and that the balance due the plaintiff from the defendants for work, labor and materials is $2,215.83.

The court further found that the defendants are the owners of 35 lower headers and 36 upper headers described in said invoices; that said headers are in the possession of the plaintiff and that the defendants are entitled to the possession thereof and that in the event the plaintiff fails to return said headers to the defendants after payment by defendants of all amounts due plaintiff, defendants "are entitled to judgment against plaintiff in the amount of $38.32 for each lower header and $44.10 for each upper header not so returned."

On defendants' cross-complaint the court found that "there was no breach of warranty, or breach of contract on the part of plaintiff by reason of the manufacture of headers" and that the defendants had not been damaged in any amount.

The difference between $2,215.83, the total amount found due from the defendants to the plaintiff, and $1,450.78, one-half of the salvage cost and one-half of the cost of manufacture of the replacement headers, consists of items either stipulated or not now disputed.

Judgment was entered in favor of the plaintiff for $2,215.83. The judgment further decrees that the defendants are the owners of the 35 lower headers and 36 upper headers which plaintiff is to return to defendants provided that the defendants have paid all sums due to the plaintiff and if not so

returned defendants will be entitled to judgment against plaintiff for the specified amount for each unreturned header.

It is the defendants' contention that the finding that the parties are to bear equally the expense of salvaging the defective headers and of manufacturing the replacement headers, is without evidentiary support where the only evidence adduced shows that one or the other of the parties is exclusively liable for the whole of one or the other or both of said items of expense.

The plaintiff had manufactured and the defendants had paid for the 31 headers, the attempted salvage of which is the subject of Invoice Number 388 for $1,203.27. The plaintiff testified that the defendants ordered the salvage work done and agreed to pay therefor. The defendant Malan testified that no such order was given. The defendants' position with respect thereto was that having paid for the headers they were entitled under the warranty to have headers which met the plans and specifications and were not liable for plaintiff's expense in unsuccessfully attempting to bring the headers up to specifications.

As to Invoice Number 379 for $1,698.29, the cost of the manufacture of the replacement headers, the plaintiff testified that defendant Malan ordered and agreed to pay for these 41 headers as inventory items. The defendant Malan denied any such order or agreement. As to this item, the defendants insisted they were entitled without charge to the new headers to replace the defective parts. Thus, the issue as to the liability for each of these charges was squarely before the court.

The defendants contend there was no evidence presented by either party of an agreement to share equally the salvage expense and the replacement costs. That contention has gone unchallenged by the plaintiff and we find none. Under the issues as framed and tried, the court had two alternatives. If it believed the plaintiff, the plaintiff was entitled to recover the full amount of both of the invoices in total amount of $2,901.35. If it believed the defendants, the defendants were entitled to a finding that they were not indebted in any amount to plaintiff on these items. There is no evidence to support the finding that the defendants are half liable on either or both of said invoices.

Plaintiff's only response to this contention is that plaintiff's "basic cause of action is based on the book account" which is a common count and which "in essence is a count for money

had and received which is governed by equitable principles,'' thus, the trial court has the power and duty to adjust the relief so that it is ''just and equitable to all parties.'' The plaintiff further contends ''that the court in the interest of justice has the power to make an equitable disposition of the rights of the parties.'' Plaintiff cites only *Philpott* v. *Superior Court,* 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990], which is a learned discussion of the development of the law of quasi-contracts and which determines that a common count for money had and received is an action at law and not in equity and which does not at all support plaintiff's answer to defendants' contention except by the injudicious use of certain phrases taken out of context.

 Facts found must be within the issues and findings must be on the issues raised. Findings on issues not actually submitted and tried by the court will not support the judgment. (48 Cal.Jur.2d p. 302 and cases cited.) Here it is clear that there is no issue in the pleadings nor raised at the trial that the defendants were liable for one-half of the cost of salvaging the defective headers or one-half of the cost of manufacturing the replacement headers. The defendants' contention is tenable that so much of the finding that the parties are to bear the expenses of Invoices Numbers 388 and 379 equally and that there was due and owing to plaintiff from defendants one-half the total sum of said invoices is neither within the issues nor supported by any evidence.

 The defendants' next contention is that the finding that plaintiffs manufactured defective parts is contradictory and irreconcilable with the finding that there was no breach of warranty. The trial court found that the headers which were the subject of dispute were manufactured by the plaintiff upon the warranty ''that the articles would be free from defects of material and workmanship.'' The court further found that the plaintiff manufactured replacement headers ''to replace said defective headers'' and, finally, it found that there was no breach of warranty in the manufacture of the headers. The only evidence as to defects was directed at defects of material and workmanship.

The conflict in the findings is clear, irreconcilable, and material. It is impossible to harmonize them. *Estate of Harvey,* 164 Cal.App.2d 330, at page 334 [330 P.2d 478] says: ''Where the findings are contradictory and irreconcilable with respect to matters which are material to the merits of the case, and the determination of them, one way or the

other, is essential to the correctness of the judgment, the judgment cannot stand.'' To the same effect is *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service,* 217 Cal. 131, at page 137 [17 P.2d 712] : ''Although it is true that findings must be liberally construed to support the judgment if possible, it is equally true that where there are contradictory, irreconcilable findings about matters material to a proper disposition of the case, the appellate court can do nothing but reverse the case.'' See also *Zweig* v. *Fireman's Fund Indem. Co.,* 139 Cal.App.2d 461, 465 [293 P.2d 812].

The defendants cross-complained for damages for breach of warranty in the amount of $1,192.20, occasioned by the plaintiff's manufacture of defective headers. Although the trial court found the headers were defective, it found that there was no breach of warranty and that the defendants had not been damaged in that or any other amount. Without any relief being sought by the defendants in their cross-complaint for possession of the defective headers and the replacement headers, the court made a conclusion and in the judgment decreed that the defendants were the owners thereof, and ordered the plaintiff to return said headers to defendants when the defendants had paid the money judgment. The relief sought and denied to the cross-complainants appears to be inextricably bound up in the issues tried on the complaint, particularly in that the trial court conditioned the delivery of possession of the headers to the defendants upon their payment of the money judgment in favor of plaintiff.

In an action where the defendant appealed from a judgment in favor of the plaintiff but not from the part thereof in favor of the defendant as cross-complainant, the court said in *Sun Oil Co.* v. *Union Drilling etc. Co.,* 208 Cal. 114, at page 119 [280 P. 535] : ''Where the provisions of the judgment are interdependent as here, an appellate court may not properly reverse the judgment as to the part complained of, allowing the remainder to stand.''

The judgment is reversed and the cause remanded for a new trial.

Fox, P. J., and Ashburn, J., concurred.