[Civ. No. 6995. Fourth Dist. Oct. 31, 1963.]

RICHARD HAKE et al., Plaintiffs and Respondents, v. WILSON W. WIED et al., Defendants and Appellants.

Holliday, Folsom & Winters and David S. Folsom for Defendants and Appellants.

Kimball & Mitchell and Don W. Mitchell for Plaintiffs and Respondents.

BROWN (R.M.) J.[*]—Appellants Wied and David M. and Mary Bess Rhea appeal from a judgment in favor of respondents Hake et al., after a nonjury trial in which the court awarded the respondents judgment against Rhea for foreclosure on certain laundry equipment under a chattel mortgage, the balance being due in the sum of $15,919.21; and a judgment against Wied for rental of certain equipment in the sum of $7,800.

This lawsuit arose out of a transaction involving a laundromat which Hake had originally sold to Rhea, a former employee, in 1956 for $25,000, of which $17,622.74 was represented by a note payable at $100 per month, secured by a chattel mortgage on all of the laundry equipment, not including the equipment which had not been paid for by Hake, and a few other minor items.

In February 1960 Rhea advised Hake that he was unable to continue making payments. There was some conflict in the testimony as to whether it was not agreed that Hake took over possession from Rhea and turned it over to Wied. Wied

---

[*]Assigned by Chairman of Judicial Council.

and Hake testified that Hake took possession and that Wied took possession as Hake's agent or custodian. In any event, Wied took over the property; there was delay in entering into a completed agreement with Hake to assume the Rhea obligation and mortgage due to certain federal tax liens which were filed, and there was no finding that Wied ever made any agreement to pay Hake for the equipment.

In April 1961 Hake filed a suit to hold Wied as guarantor of the Rhea note and chattel mortgage and the balance due thereon; a common count against Wied for the same amount on the theory of a sale of the property described in the chattel mortgage to Wied; for the same amount on the theory that Wied orally agreed to purchase said property by paying the note; a cause of action against Wied for intentionally delaying the execution of instruments to complete the purchase and sale of the property; and a cause of action for the foreclosure of the chattel mortgage and a deficiency judgment against Rhea and Wied.

The pretrial order set forth the issues as: A determination of the balance on the note; whether Hake owned the personal property set forth in the chattel mortgage and whether the said property was delivered to Hake and Wied; contractual relationship, if any; agreement of assumption of indebtedness, if any; what property was subject to the chattel mortgage; and whether or not Hake was entitled to a decree of foreclosure and a personal judgment for deficiency, if any; and reserving to the parties any other issues raised by the pleadings.

The trial court's findings of fact indicate that: (No. 4) Hake was the owner of the laundromat which included fixtures and equipment set forth in the mortgage and "list of office equipment, washroom machinery and finish department machinery" and two dryers not listed; (No. 5) Hake sold this equipment for $25,000 to Rhea, receiving a note and chattel mortgage for the balance of $17,662.74; (No. 6) There was due $15,919.21; (No. 7) On February 10, 1960, Rhea abandoned the property set forth in the mortgage of chattels, "list of office equipment, washroom machinery, finish department machinery" and the "two said Dryers"; (No. 8) On February 10, 1960, Rhea relinquished any and all claims of right, title and interest in the property set forth in said "list of office equipment, washroom machinery, finish department machinery" and the two Dryers, to Hake; (No. 9) Hake, on February 10, 1960, was the owner of the proper-

ty set forth in the "list of office equipment" etc. and the two Dryers, and was entitled to possession and control of the property set forth in the chattel mortgage; (No. 10) On February 10, 1960, Wied took possession of all of this equipment, including the chattel mortgage property, with the knowledge and consent of Hake; (No. 11) The Hakes had been paid nothing for the use of said equipment; and (No. 12) The reasonable rental value from February 10, 1960, to March 9, 1962, was $325 per month.

The conclusions of law dated April 10, 1962, were that the Rheas were foreclosed of all interest in said property; that the property described in the chattel mortgage was to be sold and the proceeds applied to payment of costs and expenses of this action and the note and any balance held by the court for a deficiency against the Rheas, if any; and a judgment against Wied for $7,800 for the use of said laundry equipment though March 9, 1962. A judgment was accordingly entered and Wied and the Rheas appeal therefrom.

The findings of fact and conclusions of law are inconsistent in this matter. Finding No. 7 indicates that the Rheas abandoned the property set forth in the chattel mortgage and the list of office equipment and Finding No. 8 indicates that they relinquished all right, title and interest in the property set forth in the list of office equipment, which is practically the same as that set forth in the chattel mortgage. No. 9 finds that the Hakes were the owners of all this property, entitled to possession; No. 10, that Wied did take possession of the property listed in the chattel mortgage and in the list of office equipment and that the Hakes consented and agreed to Wied taking and keeping possession of the equipment.

The mere change in possession of mortgaged property does not transfer title to that property, and,

" ... the mortgagee has only a lien thereon as security for the payment of his debt. A contract of mortgage is by statute declared subject to the provisions of the chapter relating to liens, and a lien, or a contract for a lien, transfers no title to the property subject to the lien, notwithstanding an agreement to the contrary. The operation of the rule is not changed by delivery of possession to the mortgagee, for the taking of possession by the mortgagee merely increases the value of his security. Title remains in the mortgagor and his right of redemption continues until cut off by a sale of the property at public auction, as a pledge, or under an order of sale in a proceeding to foreclose, or pursuant to a sale under

a power of sale provision contained in the mortgage." (10 Cal.Jur.2d, Chattel Mortgages, § 43, p. 329.) The court in *Ely* v. *Williams*, 6 Cal.App. 455, at pages 457-458 [92 P. 393], stated: "The right of the mortgagee to possession of the mortgaged property is one created by the contract. Under our code, a mortgage gives to the mortgagee neither the title, possession, or right to the possession of the mortgaged property, unless authorized by the express terms of that instrument. (Civ. Code, §§ 2920, 2927.) If there be a change of possession from the mortgagor to the mortgagee, whether accomplished voluntarily, by the use of the necessary force authorized by the terms of the mortgage, or by an action of replevin, it does not affect the interest of the mortgagee in the property. The title remains in the mortgagor (*Harper* v. *Gordon,* 128 Cal. 489 [61 P. 84]), and his equity of redemption is not cut off until the property is sold at public auction as a pledge, or under an order of sale in a proceeding to foreclose. (*Wilson* v. *Brannan,* 27 Cal. 258.)"

 In the case before us the court has found that the Rheas abandoned the property and relinquished all title in the property to Hake, but there is no finding that Hake accepted title with the intention of cancelling the chattel mortgage.

The very fact that the court foreclosed the Rheas of all interest, lien or equity of redemption in its judgment as of April 10, 1962, indicates the inconsistency in that here, the Rheas either had title to the property for the purpose of such foreclosure, or did not have title as and from February 10th, when the finding was that the property had been abandoned and title relinquished. Civil Code, section 2967, states: "A mortgagee of personal property, when the debt to secure which the mortgage was executed becomes due, may foreclose the mortgagor's right of redemption by a sale of the property, made in the manner and upon the notice prescribed by the title on 'pledge,' or by proceedings under the Code of Civil Procedure."

The determination of a rental value from February 10, 1960, to March 9, 1962, of $325 per month is that if we follow the theory that foreclosure did not occur until ordered in April of 1962 the Rheas would be entitled to any income from the use of said property if they so desired and the trial court has no authority to charge Wied with rental for the credit of Hake and not apply it to the mortgage.

Though Hake executed on August 29, 1960, an agreement

between himself, the Rheas and Wied as to the assumption by Wied of the original chattel mortgage, this was not executed by Wied or by Rhea. This shows that there was not a merger.

There was no finding of fact that there was a merger of Rhea's interest with Hake's. The finding that Hake had title to the property implies a merger, and thus no mortgage to foreclose.

■ "In the case of mortgages, under ordinary circumstances, where the holder of the mortgage acquires the estate of the mortgagor the mortgage interest is merged in the fee and the mortgage is extinguished." (33 Cal.Jur.2d, Mortgages, § 284, p. 670.)

■ "The intention of the parties on the question of merger may be expressly declared, or it may appear from the conduct of the parties,. . . . . . An intent to effect a merger is indicated where, after acquiring the equity, the mortgagee conveys the property or leases it to a stranger, . . ." (59 C.J.S., Mortgages, § 440, pp. 679-680.) (See 10 Cal.Jur.2d, Chattel Mortgages, § 71, pp. 369-370.)

■ Merger is a question of the intention, actual or presumed, of the person in whom the interests are united, and is a question of fact, and all the circumstances should be considered. (33 Cal.Jur.2d, Mortgages, § 285, p. 671.)

■ However, in this case we have no finding as to a merger. We have the findings (7, 8 and 9) that the Rheas relinquished any and all claims to the machinery and that Wied took possession of the equipment and by the judgment of April 10, 1962, the Rheas were foreclosed of all interest in and to said property.

There being no merger and such a foreclosure, we come to the conclusion that the evidence shows that the parties did not intend a merger and that the Rheas had title to the property until the foreclosure.

Thus, the findings and conclusions are *inconsistent* in that the Rheas had relinquished all claims as of February 1960— yet, being foreclosed on as title holders as of April 1962, and charging rent for the use of said premises while Rhea still had title to the property.

■ Inconsistency in findings of the judgment is discussed in *Skarda* v. *Malan Vibrator Co.*, 180 Cal.App.2d 856, at pages 860-861 [5 Cal.Rptr. 48], where Justice Richards said:

"The conflict in the findings is clear, irreconcilable, and

material. It is impossible to harmonize them. *Estate of Harvey*, 164 Cal.App.2d 330, at page 334 [330 P.2d 478] says: 'Where the findings are contradictory and irreconcilable with respect to matters which are material to the merits of the case, and the determination of them, one way or the other, is essential to the correctness of the judgment, the judgment cannot stand.' To the same effect is *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service*, 217 Cal. 131, at page 137 [17 P.2d 712]: 'Although it is true that findings must be liberally construed to support the judgment if possible, it is equally true that where there are contradictory, irreconcilable findings about matters material to a proper disposition of the case, the appellate court can do nothing but reverse the case.' See also *Zweig* v. *Fireman's Fund Indem. Co.*, 139 Cal.App. 2d 461, 465 [293 P.2d 812].'' (See also *Neill* v. *Klobas*, 192 Cal.App.2d 324, 325-326 [12 Cal.Rptr. 224].)

■ Appellants make reference to the lack in the pretrial order of any issue as to rent for the equipment. We do note that in the pretrial order the parties did not waive any of the issues made by the pleadings. In the pleadings the third cause of action was an allegation that the use and possession of the property had resulted in earnings and profits to Wied in an unknown amount, and we believe that this opens up the question of the value thereof and was within the issues before the trial court. (Cal. Rules of Court, rule 216.*)

Findings where proper on this issue should have been limited to the reasonable value of the use of this equipment by Wied if there had been a merger. There was testimony that Wied had only used a portion of this equipment and that it was depreciating, but plaintiff Hake assumed that he was entitled to any income as rent as an owner and that Hake was not a bailor.

In reviewing the testimony of Mr. McDaniel we conclude that he was merely testifying as to what he as a dealer in cleaning and laundry equipment would rent as such lessor to Mr. Hake equipment similar to that listed in the chattel mortgage. He stated that he hadn't seen this equipment for at least a year or two and didn't know what "shape" it was in, but that he would want $415 per month installed, or $361 per month plus installation, or $75 less if one piece of equipment was not included. Thus, McDaniel's testimony was of no value as to the amount for the use of said equipment.

*Formerly Rules for the Superior Court, rule 8.8.

Such testimony would really be of value only if it were taken for the purpose of determining how much money should be credited, if collected, to the Rheas' chattel mortgage.

Thus, in effect, the judgment was unjust on its face to permit Hake to have the full amount of the chattel mortgage foreclosed, the property sold, a deficiency levied against Mr. Rhea, and require Mr. Wied to pay $7,800 as rent for Mr. Rhea's property.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.