Filed 2/25/21  Azar v. Azar CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| INDRAWOUS AZAR, et al.<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>SHIBLI AZAR, et al.,<br><br>    Defendants and Appellants. | A159261<br><br>(San Mateo County<br>Super. Ct. No. 18CIV01833) |

This case concerns an interfamilial dispute over the ownership of real property.  Indrawous ("Andy") and his brother Simon Azar, along with Andy's wife Nadia Azar, are the plaintiffs in this case; we refer to Andy and Simon collectively as "plaintiff brothers."[1]  A third brother, Shibli Azar, and his wife Naifeh Azar are the defendants.  Following a bench trial, the court found plaintiff brothers to be the real (beneficial) owners of the property, and imposed a resulting trust in their favor; it found defendants held legal title as trustees with no ownership interest.  In the judgment under review, the court further found that Simon had waived any beneficial interest in the property,

---

[1]     In order to avoid confusion as the parties share the same last name, we shall hereinafter refer to them by their first names as used in the trial court. We mean no disrespect by doing so.

1

and legal title of the property was quieted and confirmed to beneficial owner Andy and his wife Nadia.

While the notice of appeal was filed on behalf of both defendants, no appellate brief has been filed on behalf of Shibli. Accordingly, we dismiss his appeal as abandoned. (See *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 131, fn. 5 [appellant who filed notice of appeal abandoned appeal when brief was not filed].) As to Naifeh's appeal, we conclude the judgment must be reversed as the court's statement of decision includes impermissible and/or irreconcilable findings concerning the resolution of two material issues: (1) Shibli's apparent authority to act for Naifeh and (2) Naifeh's intent to purchase the property in trust for Andy and Simon. Because the court's decision on these two key issues cannot be separated from its rulings on the timeliness and merits of the resulting trust cause of action, we do not address Naifeh's challenges to those rulings. On remand, the trial court shall issue a new statement of decision and enter judgment accordingly.

## BACKGROUND

This action was commenced in 2018 to resolve a dispute over the ownership of a two-story residence (hereinafter "the property") purchased in November 1976. Defendants never took possession of the property or lived in the house. Instead, plaintiff brothers moved into the house along with other family members and used it as their home for the next forty plus years. At the time the lawsuit was filed, plaintiffs Andy and his wife Nadia were still living in the home. Following a bench trial, the court granted relief to plaintiffs on their causes of action for a resulting trust and to quiet title in the property, and found in pertinent part that the resulting trust cause of action was not barred by the statute of limitations.

2

The trial court issued a statement of decision detailing the findings in support of its conclusion that plaintiff brothers met their burden of showing, by clear and convincing evidence, that they were the real (beneficial) owners under a resulting trust theory. The court found the property was purchased with funds attributed solely to plaintiff brothers; title to the property was taken in the names of both defendants (Shibli and Naifeh) to facilitate financing the purchase; very shortly after the purchase plaintiff brothers took possession of the property; and for the next forty plus years plaintiff brothers considered themselves to be the owners, paid the mortgage, taxes, insurance, utilities expenses, and maintained the property.

The trial court, "[s]ummarizing the testimony," found there "was a conflict between what the Plaintiffs alleged occurred and what the parties intended and what the Defendants alleged occurred and what the parties intended. Plaintiff[s] had significant documentation and corroboration of their position; while Defendants had scarcely any credible or reliable documentation or corroboration of their position. In fact, it appears that [D]efendants engaged in intentional falsehoods concerning their payments of expenses on the . . . property. For this reason, the court has discounted the testimony from [D]efendants and found that, by clear and convincing evidence, [P]laintiffs['] allegations are supported by the evidence."

Immediately following the above-described findings, the trial court went on: "There is a question as to whether Shibli's promises and actions can bind Naifeh, who apparently objected to any agreement or understanding [Shibli] had with plaintiffs, in regard to holding the property for Plaintiffs, and ultimately transferring title to them. The court finds Shibli did bind Naifeh's interest in the property under the following combination of reasons: First, all parties acknowledged that within the culture and practices of the

3

parties' homeland, a husband speaks for the family and may bind the family to agreements. Second, Naifeh testified that, because she feared for her safety from Shibli, she remained silent in the presence of Shibli and Plaintiffs when they discussed the subject of transferring title. She never spoke up with any objection. Based upon these factors, Shibli had apparent authority to speak on behalf of Naifeh; and Plaintiffs could reasonably rely on his apparent authority."

## DISCUSSION

We begin our discussion with a short statement regarding the well-settled law regarding the imposition of a resulting trust upon real property. " 'A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties. [Citations.] "Ordinarily a resulting trust arises in favor of the payor of the purchase price of the property where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another. [Citations.] 'The trust arises because it is the natural presumption in such a case that it was their intention that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired.' [Citations.]" ' [Citation.] In other words, the relationship between resulting trustee and beneficiary arises where one, in good faith, acquires title to property *belonging to another*. The law implies an obligation on the part of the one in whom title has vested to hold the property for the owner's benefit and eventually convey it to the owner. The trustee has no duties to perform, no trust to administer, and no purpose to pursue except the single purpose of holding or conveying the

4

property according to the beneficiary's demands." (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874; italics in original.)

## A. The Court Failed to Make Adequate Findings Regarding Naifeh's Intent and Shibli's Apparent Authority to Act for Naifeh

As the trial court noted, a key material issue was whether Naifeh intended to purchase the property in trust for plaintiff brothers. As a corollary to Naifeh's intent, another key issue was whether Shibli had the apparent authority to act for Naifeh (as her agent) and bind her to the agreement he made with plaintiff brothers to purchase the property in trust and convey title to them as the real (beneficial) owners.

However, the trial court did not make a specific finding as to Naifeh's intent, but instead it impermissibly relied on the "culture and practices" of the parties to find that Shibli spoke for Naifeh in his discussions about the property (because according to certain witnesses in their family a husband speaks for his wife) while also finding Naifeh stayed silent out of fear. In so ruling, the court appears to have failed to consider applicable California law that governs this action. (See *Hurtado v. Superior C*ourt (1974) 11 Cal.3d 574, 581 ["it is understood that ['](n)ormally, even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum[']"; "generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state"].)

The trial court's "culture and practices" rationale is not based on any statements by Naifeh that her husband, Shibli, spoke for her. Rather, the only support in the record is plaintiff brothers' testimony that in their family it is understood that a husband speaks for his wife. They further testified

5

that, as a consequence, a husband can bind his wife to an agreement to convey community real property without her consent. The record does not contain any evidence that Naifeh told plaintiff brothers that Shibli was acting for her. Meanwhile, the evidence is undisputed that Naifeh filed a complaint with the city in 1980 in an attempt to stop construction on the property based on her assertion that she was the owner.

The marital relationship between Naifeh and Shibli is insufficient to support a finding that Shibli had apparent authority to act for Naifeh. While "spouses are fiduciaries," that does "not create a power to contractually bind each other in the agency context;" and " 'agency cannot be implied from the marriage relation alone.' " (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 589 (*Flores*); see *In re Brace* (2020) 9 Cal.5th 903, 938, quoting Fam. Code, § 1102, subd. (a), formerly Civ. Code, § 5127[2]; see Fam. Code, § 1102, subd. (a) [while "either spouse has the management and control of the community real property . . . acquired . . . after January 1, 1975, . . . both spouses, either personally or by a duly authorized agent, are required to join in executing an instrument by which . . . community real property or an interest therein is . . . conveyed" to a third party].) It is true that " 'much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses,' " but the testimony of plaintiff brothers is inadequate as it is premised upon Shibli being able to speak for Naifeh based solely on their marital relationship. (*Flores*, *supra*, at p. 589.)

---

[2]     "In 1975, reforms of the community property laws became effective, including legislation giving either spouse the management and control of the community property ([Civ. Code,] § 5125) and made [former Civil Code] section 5127 gender neutral. (Stats.1974, ch. 1206, § 5, p. 2610.)" (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 35.) In 1993, former Civil Code section 5127 was continued in Family Code section 1102 without substantive change. (23 Cal. L. Rev. Comm. Reports 1 (1993).)

We find unavailing plaintiffs' attempt to justify the trial court's "culture and practices" rationale under Evidence Code section 1105, which allows a court to consider evidence of "habit or custom" to prove conduct on a specified occasion in conformity with that habit or custom. (*Ibid.*) Here, the court made no finding that Naifeh had any "habit or custom" of either delegating authority to Shibli to handle community real property purchases or allowing him to unilaterally bind her to contractual obligations.

Finally, there is no justification for the trial court's second reason to confer apparent agent status on Shibli—Naifeh's testimony that she did not object to the conveyance of title during family discussions out of fear for her safety. "[U]nder some circumstances the wife's inaction throughout dealings which involve her property can be used as the basis for a finding that the husband was her agent in these dealings and that his actions therefore were binding on her and her property." (*Lovetro v. Steers* (1965) 234 Cal.App.2d 461, 475.) However, there is nothing in our jurisprudence that would permit a court to find that a wife stayed silent out of fear of her husband and his family and yet can be bound by his statements under an agency theory. Also, and significant for purposes of our review, the court's seeming acceptance of Naifeh's testimony as to her fear for her safety is in direct and irreconcilable conflict with its other finding that none of Naifeh's testimony was credible.

## B.    Conclusion

It is the trial court's obligation to issue a statement of decision that resolves the material issues with adequate and definite findings of fact. While we liberally construe findings on appeal to support the judgment, trial "[c]ourts should frame their findings with sufficient definiteness to enable" us to review the material issues, and findings should not be fatally

7

"contradictory on material issues." (*Zweig v. Fireman's Fund Indemnity Co.* (1956) 139 Cal.App.2d 461, 465.)

Because the trial court's statement of decision includes fundamentally contradictory credibility findings and does not adequately or appropriately address the key issues of Naifeh's intent and, as a corollary, Shibli's authority to act for Naifeh, we reverse. On remand the court is directed to issue a new statement of decision and enter judgment accordingly. Our decision should not be read as expressing any opinion as to how the trial court should resolve the material issues submitted by the parties, including the questions of Naifeh's intent and Shibli's apparent authority to act for Naifeh.

## DISPOSITION

The appeal filed by defendant Shibli Azar is dismissed.

The October 30, 2019 judgment is reversed. On remand the trial court is directed to issue a new statement of decision and enter judgment accordingly. The parties shall bear their own costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.

*A159261/Azar, et al. v. Azar, et al.*

9