[No. D048002. Fourth Dist., Div. One. Mar. 13, 2007.]

JOSEPHINA FLORES et al., Plaintiffs and Respondents, v.
EVERGREEN AT SAN DIEGO, LLC, Defendant and Appellant.

COUNSEL

Beach • Whitman, Thomas E. Beach, Sean D. Cowdrey and Melinda Belew Owen for Defendant and Appellant.

Ramírez & Rodriguez, Manuel L. Ramírez and Alejandro Morales; The Ramírez Law Firm and Manuel L. Ramírez for Plaintiffs and Respondents.

OPINION

**HALLER, J.**—Evergreen at San Diego, LLC (Evergreen), appeals from an order denying its petition to compel arbitration of the civil action filed by Luis and Josephina Flores against Evergreen. Luis signed an arbitration

agreement when admitting his wife, Josephina, into Evergreen's skilled nursing facility. We conclude Luis did not have authority to bind his wife to the arbitration agreement. Accordingly, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2004, Josephina Flores, who was suffering from dementia and other ailments, was admitted to Evergreen's skilled nursing facility. As part of the admission process, Luis Flores, Josephina's husband, signed various documents provided by Evergreen. These included two arbitration agreements. The arbitration agreements provide for the use of arbitration in lieu of a lawsuit to resolve medical malpractice claims and other disputes arising from the facility's provision of services.

When a patient is admitted to a skilled nursing facility, the patient or the patient's representative must sign a standard admission agreement. (Health & Saf. Code,[1] § 1599.61, subd. (a).) If the facility requests that the patient agree to arbitration, this provision cannot be included in the standard admission agreement. Instead, it must be set forth in a separate document with a separate signature line. (§ 1599.81, subd. (b).) Consistent with this statutory mandate, the arbitration agreements signed by Luis were on forms separate from the admission agreement. The signature lines on the arbitration agreements state: "Legal Rep/Responsible Party/Agent." On the admission agreement, Luis signed a line designated "[a]gent"; on other admission documents he signed lines variously designated "[l]egal [r]epresentative" or "[r]esponsible [p]arty."

At the time he signed these documents, Luis did not have a power of attorney to act for Josephina, nor had he been declared her conservator or guardian. Approximately nine months later, in February 2005, Josephina signed a power of attorney giving Luis authority over a variety of matters, including "[c]laims and [l]itigation."

On August 22, 2005, Josephina and Luis filed a civil complaint against Evergreen, alleging negligence and several other causes of action. According to the allegations in the complaint, on January 19, 2005, Evergreen staff allowed Josephina to fall to the floor, resulting in a leg fracture, and then failed to provide her medical treatment for approximately 24 hours. Luis pleaded a loss of consortium cause of action.

---

[1] Statutory references are to the Health and Safety Code unless otherwise specified.

In December 2005, based on the arbitration agreements signed by Luis, Evergreen filed a petition to compel arbitration. The Floreses opposed the petition, asserting that Luis "did not have any legal authority to waive [Josephina's] right to trial by jury by allegedly signing an arbitration agreement." The Floreses asserted that Luis's authority on behalf of his wife extended only to making medical decisions for her as provided under California law, and that waiver of a jury trial is not a medical decision. Evergreen responded that given his wife's dementia, Luis represented himself as his wife's agent, as shown by his conduct of signing all the admission papers on her behalf, and that Josephina "allowed [Evergreen] to believe that [Luis] had the authority to act on her behalf." Evergreen also asserted that Luis's status as Josephina's spouse gave him authority to act as her agent.

In January 2006, the trial court denied Evergreen's petition to compel arbitration. The court reasoned there was "no evidence that the purported principal (Josephina Flores) did anything which caused [Evergreen] to believe that her husband was her agent," and thus the "fact that Luis Flores purportedly signed the admission papers on her behalf is irrelevant." The court also rejected Evergreen's assertion that Luis's spousal status conferred authority on him to agree to arbitration.

## DISCUSSION

■ The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263 [33 Cal.Rptr.3d 350] (*Garrison*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 [120 Cal.Rptr.2d 892] (*Pagarigan*).) Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony. (*Engalla, supra,* 15 Cal.4th at p. 972; Code Civ. Proc., §§ 1281.2, 1290.2.) If the facts are undisputed, on appeal we independently review the case to determine whether a valid arbitration agreement exists. (*Garrison, supra,* 132 Cal.App.4th at p. 263; *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142 [119 Cal.Rptr.2d 489].)

Evergreen asserts the trial court erred in denying its petition to compel arbitration because Luis's status as Josephina's spouse gave him authority to bind her to the arbitration agreements. Reviewing general agency principles and statutory authority governing nursing homes, we conclude that absent a

legislative directive, the spousal relationship alone is insufficient to confer authority to agree to an arbitration provision in a nursing home admission contract.

## A. *Agency Authority*

■ Generally, a person who is not a party to an arbitration agreement is not bound by it. (*Buckner v. Tamarin, supra,* 98 Cal.App.4th at p. 142.) However, there are exceptions. For example, a *patient* who signs an arbitration agreement at a health care facility can bind relatives who present claims arising from the patient's treatment. (*Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1511–1516 [26 Cal.Rptr.2d 725]; *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1591 [283 Cal.Rptr. 209].) Further, a person who is authorized to act as the patient's *agent* can bind the patient to an arbitration agreement. (*Garrison, supra,* 132 Cal.App.4th at pp. 264–266; see *Buckner, supra,* 98 Cal.App.4th at p. 142.)[2]

In *Garrison,* the court held that a daughter who had a durable power of attorney to make health care decisions for her mother could bind her mother to an arbitration agreement in a residential care facility's admission documents. (*Garrison, supra,* 132 Cal.App.4th at p. 265.) The *Garrison* court reasoned that the decision whether to accept an arbitration provision in the admission documents was "part of the health care decisionmaking process" authorized in the durable power of attorney for health care. (*Id.* at p. 266.)

Here, Josephina did not sign the arbitration agreements; thus, this is not a case where a *signatory* patient binds his or her spouse who asserts a claim derived from the patient's care. Further, unlike the situation in *Garrison,* at the time Luis signed the arbitration agreements he did not have a power of attorney authorizing him to act as Josephina's agent. Thus, there was no written instrument conferring agency power on Luis.

■ Even when there is no written agency authorization, an agency relationship may arise by oral consent or by implication from the conduct of the parties. (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 [6 Cal.Rptr.3d 746].) However, an agency cannot be created by the

---

[2] Another exception exists when a person secures a health care plan that covers relatives as beneficiaries; the beneficiaries of the plan are bound by an arbitration provision in the plan. (*Hawkins v. Superior Court* (1979) 89 Cal.App.3d 413, 415–419 [152 Cal.Rptr. 491].)

conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency. Agency "can be established either by agreement between the agent and the principal, that is, a true agency [citation], or it can be founded on ostensible authority, that is, some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons." (*Lovetro v. Steers* (1965) 234 Cal.App.2d 461, 474–475 [44 Cal.Rptr. 604]; see Civ. Code, §§ 2298, 2300.) " ' "The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.". . .' [Citations.] Thus, the 'formation of an agency relationship is a bilateral matter. Words or conduct by *both principal and agent* are necessary to create the relationship . . . .' " (*van't Rood, supra*, 113 Cal.App.4th at p. 571, italics added.)

Applying these principles, in *Pagarigan, supra*, 99 Cal.App.4th at pages 301–302, the appellate court affirmed the denial of a nursing home's motion to compel arbitration, finding there was no evidence that a comatose mother had authorized her daughters to act as her agents to bind her to a nursing home arbitration agreement. *Pagarigan* rejected the nursing home's contention that the daughters' act of signing the agreements created agency status, explaining that conduct by the *principal* was necessary to show the agency. (*Ibid.*)

In its arguments to the trial court, Evergreen asserted that Josephina allowed it to believe her husband had authority to act for her. However, Evergreen presented no evidence to support this claim. Evergreen presented evidence that Josephina suffers from dementia[3] and other ailments, that she was admitted to Evergreen, and that her husband signed the admission documents on her behalf. Although Evergreen presented evidence regarding Luis's conduct, it failed to offer evidence regarding *Josephina's* conduct. The record is completely silent regarding Josephina's and Luis's dealings prior to her admission and/or their interactions at the time of her admission. The mere fact Luis signed the admission documents, including the arbitration agreements, is insufficient. Likewise, the fact that Josephina signed a general power of attorney form in February 2005 giving Luis agency authority does not provide the necessary evidentiary support. The power of attorney was created *after* Luis signed the admission documents in May 2004, and no facts were presented suggesting that by signing the power of attorney form

---

[3] The record does not clearly establish the level of her dementia.

Josephina intended to ratify Luis's earlier agreement to the arbitration. (See *Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d 1401].)

Even though Evergreen presented evidence showing that Luis acted as if he were Josephina's agent, the establishment of the agency also requires conduct on the part of Josephina conferring that status. It was Evergreen's burden to show the validity of the arbitration agreement based on Josephina's express or implied consent to have her husband act as her agent. As in *Pagarigan*, the record is devoid of any such evidence.

Evergreen's second argument to the trial court (and its primary argument on appeal) is premised on the claim that Luis's status as Josephina's spouse was sufficient to confer agency status on him. Evergreen asserts Luis's spousal status distinguishes this case from *Pagarigan*, which involved two daughters purporting to act on behalf of their mother. To support its assertion that the spousal relationship creates agency status, Evergreen relies on the fiduciary and support duties owed between spouses, including the duty to provide medical care. (See Fam. Code, § 4300 [general duty to support spouse]; *Hawkins v. Superior Court, supra,* 89 Cal.App.3d at pp. 418–419 [duty to support spouse includes provision of health care].) Although we agree that spouses are fiduciaries and owe a duty of support in the family law context, these duties do not create a power to contractually bind each other in the agency context. "[I]t is well established that an agency cannot be implied from the marriage relation alone." (*Lovetro v. Steers, supra,* 234 Cal.App.2d at p. 475; see *Russell v. Dopp* (1995) 36 Cal.App.4th 765, 783 [42 Cal.Rptr.2d 768]; *Avedissian v. Manukian* (1983) 141 Cal.App.3d 379, 385 [190 Cal.Rptr. 291].) We recognize that "it is also true that much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses." (*Lovetro, supra,* at p. 475.) Here, however, Evergreen presented *no* evidence of agency apart from the marital relationship. Although the establishment of an agency relationship between spouses does not require a high level of proof, the Floreses' marital relationship cannot alone create an agency.[4]

---

[4] Some decisions contain broad dicta stating spouses can bind each other to arbitration agreements. (See, e.g., *Buckner v. Tamarin, supra,* 98 Cal.App.4th at pp. 142–143; *Garrison, supra,* 132 Cal.App.4th at p. 264.) However, the supporting cases cited in these decisions do not stand for such a broad proposition, but arise in situations where the spouse who was the patient bound the other spouse to arbitration of claims arising from the medical treatment, or a spouse who purchased insurance bound the other spouse who accepted the benefits of the policy. (See *Bolanos v. Khalatian, supra,* 231 Cal.App.3d at p. 1591; *Gross v. Recabaren* (1988) 206 Cal.App.3d 771, 781 [253 Cal.Rptr. 820]; *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 77–78 [100 Cal.Rptr.2d 683].)

## B. *Statutory Authority*

Evergreen also asserts that Luis's authority to admit Josephina to the nursing facility and to make medical decisions for her gave him the authority to agree to arbitration on her behalf. Evergreen's contention is based on several statutes enacted by the Legislature that permit next of kin to make certain decisions for mentally incompetent nursing home patients. The assertion raises the issue of whether, independent of agency principles, there is a *statutory* basis for the authority to agree to arbitration based solely on kinship.

The Legislature has promulgated a detailed and comprehensive statutory scheme governing nursing homes.[5] This statutory scheme includes provisions giving family members the authority to make medical decisions and to enforce a patient's bill of rights on behalf of a mentally incompetent patient; a statute providing for the signing of an admission contract by a third party when a prospective patient is mentally incompetent; and a series of provisions permitting arbitration provisions in nursing home contracts but imposing rigorous disclosure requirements and excluding certain claims from arbitration coverage. Although the Legislature has specifically conveyed authority over medical decisionmaking and enforcement of rights to family members, it has not conveyed authority over the arbitration decision to family members. We view this as a significant omission, and accordingly conclude there is no statutory authorization for a person to agree to arbitration based solely on a familial relationship with the patient.

### Statutory and Regulatory Provisions

Section 1418.8 sets forth the procedures for a physician to order medical interventions when a nursing home patient is incapable of giving informed consent and there is no person with legal authority to make the decisions for the patient. The statute defines persons with legal authority to make medical decisions as those "designated under a valid Durable Power of Attorney for Health Care, a guardian, a conservator, *or next of kin*." (§ 1418.8, subd. (c), italics added.) Similarly, statutory and regulatory enactments defining a bill of rights for nursing home patients provide for enforcement of the rights by "next of kin" when the patient cannot understand the rights. Section 1599.1 enumerates a bill of rights to ensure such matters as adequate qualified

---

[5] For convenience, we use the term "nursing home" to refer to the skilled nursing facilities (such as Evergreen) regulated by the Health and Safety Code. (See §§ 1250, subd. (c), 1326, 1418, subd. (a)(1), 1430, subd. (b), 1599, 1599.60, subd. (b).)

staffing, good personal hygiene, and sufficient nutrition. Section 1599.3 provides that when a patient is incompetent, unable to understand the information, or exhibiting a communication barrier, the bill of rights "shall devolve to such patient's guardian, conservator, [or] *next of kin . . . .*" (Italics added.) Regulation 72527 in title 22 of the California Code of Regulations[6] incorporates the section 1599.1 rights and delineates additional rights, such as the rights to participate in the plan of care, to consent to or refuse medical treatment, and to manage personal financial affairs. (Cal. Code Regs., § 72527, subd. (a)(3), (4), (8), (24).) This regulation provides that if a patient lacks the ability to understand these rights, the rights devolve to the patient's representative, and defines a patient's representative as including a conservator, a person designated in a durable power of attorney for health care, and "*next of kin . . . .*" (Cal. Code Regs., § 72527, subds. (c), (d), italics added.)

■    The Legislature has also enacted a statute addressing the situation when a prospective nursing home patient is unable to understand and sign the admission contract. Section 1599.65, subdivision (a) provides that upon a patient's admission to a long-term care facility, the facility must explain the admission contract to a mentally competent patient and obtain his or her signature. The section states that if the patient is unable to understand the contract and cannot sign, the physician must document this fact in the patient's file. The section contains a caveat stating that the provision does "not preclude the facility from obtaining the signature of *an agent, responsible party, or a legal representative, if applicable.*"[7] (Italics added.) The section does not define who qualifies as "an agent, responsible party, or a legal representative" authorized to sign the admission contract, nor does it define the scope of authority possessed by these signatories.

Finally, there are a plethora of statutes and regulations to ensure that an arbitration agreement in a nursing home contract is obtained with the patient's informed consent and limiting the matters that may be covered by such an arbitration agreement. Section 1599.81 requires that a nursing home admission contract clearly indicate that an arbitration agreement is not a

---

[6] Subsequent references to regulations are to title 22 of the California Code of Regulations.

[7] Section 1599.65, subdivision (a) states: "Prior to or at the time of admission [of a patient to a long-term care facility], the facility shall make reasonable efforts to communicate the content of the contract to, and obtain on the contract the signature of, the person who is to be admitted to the facility. Unless the prospective resident has been declared legally incompetent or is unable to understand and sign the contract because of his or her medical condition, he or she shall sign or cosign the admission agreement. In the event the patient is unable to sign the contract, the reason shall be documented in the resident's medical record by the admitting physician. This provision does not preclude the facility from obtaining the signature of an agent, responsible party, or a legal representative, if applicable."

precondition for admission or treatment, and requires that the arbitration clause be "on a form separate from the rest of the admission contract" and contain space for the applicant's signature. (§ 1599.81, subds. (a)–(b).)[8] Section 1430, subdivision (b) precludes a nursing home patient from waiving the right to sue for alleged violations of the Patient's Bill of Rights or other statutory or regulatory rights. Section 1599.81, subdivision (d) requires that a nursing home admission contract containing an arbitration provision include a notice that the patient cannot waive the right to sue for a bill of rights violation. Regulation 72516 requires that any arbitration agreement presented to a prospective nursing home resident contain an advisory "in a prominent place at the top of the proposed arbitration agreement, in bold-face font of not less than 12 point type," stating that the arbitration agreement is not required as a condition of admission and that it cannot waive the ability to sue for a violation of the Patient's Bill of Rights. Code of Civil Procedure section 1295, which is applicable to nursing homes, requires that an arbitration agreement governing professional negligence of a health care provider state, immediately before the patient's signature line and in 10-point bold red type, that the party is giving up the right to a jury or court trial. (Code Civ. Proc., § 1295, subds. (b), (g)(1).)

*Analysis*

■ The question presented is whether the Legislature intended that its definition of a patient representative as including "next of kin" for purposes of medical decisions and bill of rights enforcement, be engrafted onto the authorized contract signatories identified in section 1599.65, and, if so, whether the next of kin authority extends to the arbitration decision. Facially, the status of agent, legal representative, or responsible party would not arise merely because of kinship. Using the ordinary meaning of these terms (see *Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994 [94 Cal.Rptr.2d 643]), an agent is a person to whom the principal has delegated authority; a

---

[8] Section 1599.81 states: "(a) All contracts of admission that contain an arbitration clause shall clearly indicate that agreement to arbitration is not a precondition for medical treatment or for admission to the facility. [¶] (b) All arbitration clauses shall be included on a form separate from the rest of the admission contract. This attachment shall contain space for the signature of any applicant who agrees to arbitration of disputes. [¶] (c) On the attachments, clauses referring to arbitration of medical malpractice claims, as provided for under Section 1295 of the Code of Civil Procedure, shall be clearly separated from other arbitration clauses, and separate signatures shall be required for each clause. [¶] (d) In the event the contract contains an arbitration clause, the contract attachment pertaining to arbitration shall contain notice that under Section 1430, the patient may not waive his or her ability to sue for violation of the patient's bill of rights."

legal representative is a person who has acquired authority through the legal process (i.e., a guardian or conservator); and a responsible party in the health care context is a person who assumes personal liability for the patient's bills (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 645 [58 Cal.Rptr.2d 89]).[9]

Although a mere familial relationship would not normally suffice to give a person formal representative status, as a matter of practical necessity there are certain decisions that must be made for a mentally incompetent nursing home patient even when there is no formal representative. The Legislature recognized this reality when it specified next of kin as among the persons authorized to make medical decisions and enforce the Patient's Bill of Rights. It is likely the Legislature also intended to allow next of kin to sign a nursing home contract for the limited purpose of *admitting* a mentally incompetent relative to the facility, even if the family member did not technically qualify as an agent, legal representative or responsible party. As with medical decisions, admission of a mentally incompetent patient to a nursing home is sometimes necessary even when there is no person with recognized legal authority to act on behalf of the patient.[10]

■ However, we cannot conclude the Legislature intended to include the *arbitration* decision as among the matters that may be decided by next of kin when signing a nursing home admission contract. In *Pagarigan*, the court held that although next of kin of a mentally incompetent patient were statutorily defined as persons authorized to make medical decisions and to exercise the patient's rights at the facility, this authority did not "translate[]

---

[9] The record does not show that Luis qualified as a signatory under section 1599.65 based on the facial meaning of the terms. As we discussed earlier, there is no evidence that Luis qualified as an agent under well-established agency principles, nor had he acquired legal representative status through such avenues as guardianship or conservatorship. Although he signed various admission documents designating him as a "responsible party," there is no document in the record stating that he was assuming personal liability for Josephina's bills. Given the factual posture of this case, we need not decide whether the Legislature intended that a responsible party should have authority to make the arbitration decision.

[10] Consistent with this view, the Department of Health Services has developed a standard admission agreement that is required to be used by nursing homes (§ 1599.61, subd. (a)), which refers to family members as authorized to sign the agreement. (See Cal. Code Regs., § 73518, subd. (a) [incorporating by reference the standard admission agreement].) The standard admission agreement instructs the patient that if he or she is unable to sign the agreement the patient's representative may sign it. The agreement defines the patient's representative as "*a family member,* or by law, any of the following: a conservator, a person designated under the Resident's Advance Directive or Power of Attorney for Health Care, *the Resident's next of kin,* any other person designated by the Resident consistent with State law, a person authorized by a court, or, if the Resident is a minor, a person authorized by law to represent the minor." (Italics added.)

into authority to sign an arbitration agreement on the patient's behalf at the request of the nursing home." (*Pagarigan, supra*, 99 Cal.App.4th at p. 302; see also *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 377 [19 Cal.Rptr.3d 819] [mentally competent mother's conduct of allowing daughter to make health care decisions did not justify expanding daughter's powers to include arbitration decision].) Absent a legislative directive to the contrary, we agree with this holding in *Pagarigan* and find it equally applicable to spouses.

Even though the Legislature has extensively regulated the issue of arbitration in nursing home contracts, and in other contexts has specified that next of kin may make significant decisions for mentally incompetent patients, it has failed to specify that next of kin have authority to agree to arbitration. Unlike admission decisions and medical care decisions, the decision whether to agree to an arbitration provision in a nursing home contract is not a necessary decision that must be made to preserve a person's well-being. Rather, an arbitration agreement pertains to the patient's legal rights, and results in a waiver of the right to a jury trial. (See *Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 764 [46 Cal.Rptr.3d 314]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9–11 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

Because arbitration agreements waive important legal rights, the Legislature has imposed heightened requirements on arbitration provisions in nursing home contracts. Notably, the Legislature has required that arbitration agreements be separate from the rest of the admission contract and contain separate signatures. Thus, when a family member signs an admission agreement, this signature cannot by law also cover an arbitration agreement. Given the Legislature's extensive regulation of arbitration agreements, combined with the facts that an arbitration agreement waives legal rights and is not necessary to preserve health, we cannot conclude that the Legislature intended *by implication* to extend authority over the arbitration decision to next of kin.

■ Because the record shows no express or implied agency created by Josephina, and because there is no statutory authority for Luis to act on Josephina's behalf when signing an arbitration agreement, the trial court properly denied Evergreen's petition to compel arbitration.

## DISPOSITION

The order is affirmed. Evergreen to pay the Floreses' costs on appeal.

McConnell, P. J., and McIntyre, J., concurred.