Filed 5/19/16  Stick v. THC Orange County, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARLENE STICK, Individually and as Successor in Interest, etc.<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THC ORANGE COUNTY, INC. et al.,<br><br>    Defendants and Appellants. | G051794<br><br>(Super. Ct. No. 30-2014-00716501)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Affirmed.

Giovanniello Law Group, Alexander Giovanniello, Helen S. Peltekci, Thomas C. Swan and Danielle M. VandenBos, for Defendants and Appellants.

Valentine Law Group, Kimberly A. Valentine, Jennifer L. Turner and Joseph F. Fighera; Aitken*Aitken*Cohn and Casey R. Johnson, for Plaintiff and Respondent.

\*        \*        \*

THC Orange County, Inc., dba Kindred Hospital Westminster and Kindred Healthcare Operating Inc. (collectively Kindred) appeal from an order denying their motion to compel arbitration of a lawsuit arising out of the allegedly negligent care provided to decedent Marwin Wilcox while he was a patient at Kindred's facility. As Kindred acknowledges, the trial court denied the motion on the basis that the durable power of attorney Wilcox executed in favor of his spouse (and plaintiff herein), Marlene Stick, was limited in scope and did not authorize her to enter into arbitration agreements on his behalf. However, apart from characterizing the court's ruling as being based on a "narrow interpretation of the durable power of attorney," Kindred makes no effort in its opening brief to demonstrate that interpretation was incorrect. None. Instead, its arguments repeatedly rely on the mere existence of the durable power of attorney – and the broad scope of power that is often granted by such documents – as a basis for arguing the court erred in denying the motion.

Kindred's omission waives any claim of error based on the court's interpretation of the durable power of attorney, and effectively concedes the point. But even if it had not, the issue would not be close. The durable power of attorney gives Stick the power to act as Wilcox's agent for exactly one purpose: "to direct distributions of principal and interest from my IRA accounts." There is simply no way the document could be interpreted as authorizing her to execute an arbitration agreement on his behalf. And once that is understood, it fatally undermines Kindred's other assertions about Stick's authority, and renders moot their contentions regarding the enforceability of arbitration agreements in general and this one specifically.

The order is affirmed.

FACTS

In November 2012, Wilcox was admitted as a patient to Kindred's Westminster hospital, an acute care facility. In connection with his admission, Stick, Wilcox's spouse, signed an arbitration agreement on his behalf, stating he would submit all medical malpractice disputes, and any other legal claims arising out of or relating to his hospitalization, to "arbitration as provided by California law." In March 2013, Wilcox was transferred from the Kindred facility to the intensive care unit at Orange Coast Memorial Medical Center, where he died the next month.

In April 2014, Stick filed a lawsuit against Kindred on Wilcox's behalf, alleging causes of action based on theories of negligence and willful misconduct, elder abuse and neglect, and intentional misrepresentation and concealment. Stick also alleged a cause of action in her own name, for wrongful death.

In January 2015, Kindred filed a motion to compel arbitration of the causes of action alleged in the complaint. In support of the motion, Kindred argued that Stick was authorized to enter into the arbitration agreement on Wilcox's behalf because he "had an executed power of attorney, allowing Marlene Stick to make decisions on his behalf." Kindred asserted it was "[p]ursuant to this authority [that] Marlene Stick, executed [the] Alternative Dispute Resolution (ADR) Agreement."

The "power of attorney" relied upon by Kindred, and included as an attachment to their motion, is a one-page document entitled "Uniform Statutory Form Power of Attorney." The document commences with a notice, set forth in all capital letters, stating, "THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FROM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465, INCLUSIVE). IF YOU HAVE ANY QUESTIONS ABOUT THESE

3

POWERS, OBTAIN COMPETENT LEGAL ADVICE.  THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL OR OTHER HEALTHCARE DECISIONS FOR YOU.  YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.”

The document then recites:  “I Marvin Marlowe Wilcox . . . appoint Marlene Jean Stick as my agent (attorney-in-fact) for me in any lawful way *with respect to the following initialed subjects*.”  (Italics added.)  Next are instructions stating, “To grant all of the following powers, initial the line in front of (N) and ignore the lines in front of the other powers.  To grant one or more, but fewer than all, of the following powers, initial the line in front of each power you are granting.  *To withhold a power, do not initial the line in front of it.  You may, but need not, cross out each power withheld.*”  (Italics added.)  Following that instruction is a list of 13 individual subject matters for which a power of attorney may be granted, each preceded by a blank line for initialing.  The listed subjects include such matters as “Real Property Transactions,” “Banking and Financial Institution Transactions” and “Claims and Litigation.”  The 14th line – line (N) – specifies “ALL OF THE POWERS LISTED ABOVE.”

Wilcox initialed *none* of the blank lines in front of those listed powers, and did not initial the line in front of letter (N).  However, in a separate section entitled “SPECIAL INSTRUCTIONS,” which informed the grantor he or she could “GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT,” Wilcox specified “My agent shall have the power to direct distributions of principal and interest from my IRA accounts.”

The form then concludes with a notification that unless otherwise specified, the power of attorney is effective immediately and will remain in effect until revoked.  It also states the power of attorney will continue to be effective even if the grantor becomes incapacitated, unless that provision is stricken.

Stick opposed the motion, arguing the power of attorney relied upon by Kindred did not authorize her to enter into any arbitration agreements on Wilcox's behalf, and she was not otherwise authorized to do so by virtue of her status as his wife. Consequently, no arbitration agreement was formed. She also argued the arbitration agreement is both procedurally and substantively unconscionable, rendering it unenforceable under California law, and that even if it were otherwise enforceable against Wilcox, it would not extend to Stick's claim for wrongful death, and the risk of inconsistent rulings justifies a denial of arbitration pursuant to Code of Civil Procedure section 1281.2.

The trial court denied the motion. In its order, the court explained "[a]s a general rule, a party cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration." The court noted that Stick had not signed the arbitration agreement on her own behalf, and stated "[t]he primary issue is whether Plaintiff [Stick's] signature [on behalf of Wilcox] was binding." The court then concluded that signature was not binding because "[t]he Power of Attorney Form [Wilcox] signed on May 1, 2006 was extremely limited in scope. It did not grant any authority for [Stick] to execute the ADR agreement. The portion relating to claims and litigation was not initialed. The agreement appears only to apply to IRA accounts." The court also explained that absent a power of attorney, Stick was not authorized to sign the agreement for Wilcox because "[t]he duties between spouses 'do not create a power to contractually bind each other in the agency context. '[I]t is well established that an agency cannot be implied from the marriage relation alone,'" citing *Flores v. Evergreen At San Diego, LLC* (2007) 148 Cal.App.4th 581, 589. The court then stated that "[b]ecause [Stick] lacked authority to execute the ADR agreement, the court does not need to address the issue of unconscionab[ility]."

DISCUSSION

Code of Civil Procedure section 1281.2 states in pertinent part:  "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists*." (Italics added.)  This statute governs motions to compel arbitration brought in California courts, without regard to whether California law or the Federal Arbitration Act otherwise applies to the proposed arbitration.  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 410 ["Because the California procedure for deciding motions to compel serves to further, rather than defeat, full and uniform effectuation of the federal law's objectives, the California law, rather than section 4 of the [United States Arbitration Act], is to be followed in California courts"].)

In this case, the trial court determined that no agreement to arbitrate existed as between either Wilcox and Kindred or Stick and Kindred.  The court explicitly rejected Kindred's reliance on a power of attorney document, executed by Wilcox in favor of Stick, to demonstrate her authority to execute the arbitration agreement on his behalf.  In doing so, the court expressly found that the power of attorney conveyed very narrow authority to Stick, allowing her to act only with respect to Wilcox's IRA accounts.

However, despite this clear finding, which undercuts Kindred's entire argument, they make no effort to address it in their opening brief.  The brief includes no discussion of the terms of the power of attorney document, and offers no arguments suggesting the court's interpretation of that document was incorrect.  Instead, Kindred's brief merely describes the court's ruling, at one point, as having been based on a "narrow

6

interpretation of the durable power of attorney," while at another point asserting the trial court "improperly disregard[ed] the durable power of attorney" in its ruling. Nothing could be further from the truth, of course. As Kindred otherwise acknowledges, the court's interpretation of that document was actually the *focus* of its ruling. In Kindred's own words, "the court denied the petition and found the ADR Agreement to be unenforceable on the grounds that Ms. Stick did not have authority under the Durable Power of Attorney to execute the ADR Agreement."

Rather than making any attempt to establish the trial court erred in its interpretation of the specific power of attorney document they rely on here, Kindred's opening brief repeatedly relies on the mere *existence* of a power of attorney document – and the broad scope of power that is often granted by such documents – as a basis for arguing the court erred in denying their motion. It is not until their reply brief (after Stick repeatedly calls out the omission in her respondent's brief) that Kindred attempts to explain why the court's interpretation of the document was erroneous. That attempt is too late, however, and the contention is waived. "Generally, appellate courts will consider an argument raised for the first time in a reply brief only if the appellant presents a good reason for failing to present the argument earlier." (*Adams v. MHC Colony Park L.P.* (2014) 224 Cal.App.4th 601, 615, fn. 12.)

But even if the issue were not waived, it would not be a close one. The form power of attorney document signed by Wilcox could hardly be more clear. It states explicitly that Wilcox is appointing Stick to act as his agent *only with respect to the subjects he specifies*. Although the document includes a long list of subjects – including "Claims and Litigation" – Wilcox specified none of them. What he specified instead, under the heading "SPECIAL INSTRUCTIONS," was that Stick "shall have the power to direct distributions of principal and interest from my IRA accounts." That is the sole authority conferred upon Stick in the power of attorney document.

7

Kindred's reliance on the boilerplate notice at the top of the document, stating that "THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING," is misplaced. That language merely describes the nature of the powers that can be granted by the document; it does not establish that any of the powers actually *have been granted*. Because this power of attorney granted Stick authority to act only with respect to Wilcox's IRA account, it did not extend to her execution of an arbitration agreement with Kindred on his behalf.

Kindred's attempt to distinguish *Flores v. Evergreen At San Diego, LLC, supra*, 148 Cal.App.4th 581, the case relied upon by the trial court to establish that a spousal relationship is insufficient, in and of itself, to give spouses authority to enter into contracts on behalf of each other, likewise fails. Kindred contends *Flores* is inapposite because it involved a spouse's execution of an arbitration agreement in connection with the other spouse's admission to a nursing home – whereas in this case, the agreement was executed in connection with the spouse's admission to an acute care hospital. Kindred points out that nursing homes and acute care hospitals "differ in many ways; most notably, they are governed by different regulations under Title 22 of the California Code of Regulations and different sections of the California Health and Safety Code." Kindred does not, however, explain why or how those differences would be pertinent to this issue.

Of similar effect to *Flores* is *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160. In *Goldman*, the court concluded a wife was not authorized to execute an arbitration agreement on her husband's behalf because "the *status* of marriage cannot substitute for the *act* of conferring agency to a spouse." (*Id.* at p. 1172.) Kindred asserts that what makes this case different from *Goldman* is that "Contrary to the facts of *Goldman*, . . . Stick had authority to act as [Wilcox's] agent based on the durable power of attorney [Wilcox] executed in 2006." But as we have

8

already explained, the trial court explicitly found to the contrary in this case, a finding Kindred simply ignored.

Kindred's other arguments are likewise undermined by the lack of any applicable power of attorney granted to Stick. For example, Kindred relies on *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, a case in which the court enforce an arbitration agreement signed by a daughter on behalf of her mother. In that case, the court determined that a mother's durable power of attorney which specifically authorized her daughter to make *healthcare decisions* could be interpreted as authorizing the daughter to enter into an arbitration agreement on her mother's behalf as part of the mother's admission to a healthcare facility. As the *Garrison* court explained, it viewed the execution of such an agreement as falling within the scope of the daughter's agency granted by the power of attorney. In this case, however, the agency Wilcox granted to Stick in the power of attorney document was for the limited purpose of directing distributions from his IRA accounts – a purpose wholly unrelated to his admission as a patient in Kindred's facility.

Kindred also argues that even if Stick did not have actual authority to enter into the agreement on behalf of Wilcox, she had implied or ostensible authority to do so, for two reasons. First, Kindred asserts Stick had implied authority to sign the arbitration agreement on behalf of Wilcox because at the time he was admitted to Kindred's facility, "he was dependent on a tracheostomy tube for breathing and therefore unable to speak. As such, Ms. Stick had a duty and obligation as [his] wife . . . to ensure he received proper medical treatment, which involved reviewing and executing as she found fit, the initial admission documents, including the ADR Agreement at issue." That assertion fails because Wilcox's inability to speak would not have precluded him from *signing documents* regarding arbitration on his own behalf. Kindred does not contend Wilcox was legally incapacitated or unconscious at the time of his admission. Moreover, as

9

Kindred otherwise points out, Wilcox's receipt of medical care was in no way dependent upon Stick signing any such agreement. To the contrary, Kindred emphasizes that Stick executed the arbitration agreement "after [Wilcox's] admission and after he had already began to receive care" and that he "would continue to receive care whether or not Ms. Stick executed the document." Those statements make clear that whatever obligation or authority Stick might have had as a spouse to ensure Wilcox received proper medical treatment, it would not have encompassed the execution of this arbitration agreement.

And second, citing Civil Code section 2300, Kindred points out that an ostensible agency is created when the principal, either intentionally or by want of ordinary care, causes a third person to believe another is his agent. However, the only thing Kindred contends Wilcox did in this case to "substantiate" their belief that Stick was authorized to act as his agent was to sign the power of attorney document: "[t]hrough the [power of attorney], Decedent indicated that Ms. Stick was to act on his behalf, and Ms. Stick agreed to do so." But here again, Kindred is simply ignoring the limited scope of the power of attorney. Nothing in the power of attorney document suggested Wilcox intended to authorize Stick to act as his agent in matters other than directing distributions of his IRA.

For all of the foregoing reasons, we find no error in the trial court's determination that Stick was not authorized to sign the arbitration agreement on behalf of Wilcox. Consequently, we conclude no agreement to arbitrate his claims ever existed. Further, Kindred's opening brief does not challenge the court's determination that Stick did not sign the agreement in her personal capacity, and thus any such challenge is waived. Because no agreement to arbitrate ever existed between Wilcox and Kindred, or between Stick and Kindred, we find no error in the court's denial of Kindred's motion to compel them to arbitrate their claims.

10

DISPOSITION

The order is affirmed.  Stick shall recover her costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

11