Filed 7/5/23  O'Cain v. Shields Nursing Center CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| OTIS L. O'CAIN,<br><br>    Plaintiff and Respondent,<br>v.<br>SHIELDS NURSING CENTER, INC., et al.,<br><br>    Defendants and Appellants. | A165055<br><br>(Contra Costa County Super Ct. No. MSC22-00021) |

Respondent Otis L. O'Cain sued appellants Shields Nursing Center, Inc., and William Shields, for the abuse and neglect he claims to have suffered in their custody.  In response, appellants filed a petition to compel binding arbitration pursuant to an agreement allegedly signed on respondent's behalf by his purported agent.  Upon the trial court's denial of that petition, appellants filed the instant appeal, arguing that the trial court erred in finding that appellants failed to meet their burden of establishing the existence of an arbitration agreement between the parties.  We disagree and therefore affirm the denial.

## I. BACKGROUND

According to the complaint, respondent is a "legally blind man, with a history of multiple medical issues," who was "initially admitted as a resident to" the appellant nursing center and later placed under appellants' care "for

1

skilled rehabilitation with occupational and physical therapy" after an intervening hospital admission for cholangitis. Alleging that respondent suffered multiple injuries in appellants' custody, the complaint sets forth claims for negligence, negligence per se, abuse of a dependent adult, and negligent infliction of emotional stress.

Appellants petitioned the trial court to compel binding arbitration. That petition alleges "the existence of two Arbitration Agreements [that] were executed on [respondent's] behalf," and attaches copies of those purported agreements along with a February 9, 2022,[1] affidavit sworn by appellant's attorney, Jeffrey S. Healey. According to the affidavit, the copies are "of the Arbitration Agreements pertaining to [respondent], which [Healey's] office obtained from [his] client who maintains said document [in] its ordinary course and scope of business." The attached documents themselves make no mention of respondent and do not bear his signature (or any other) on the lines designated for the "Resident." Instead, someone had signed a name beginning with "Angel" on the lines designated for a "Responsible Party."

Respondent then sent appellants a "meet and confer letter" urging them "to withdraw the petition immediately," and arguing that the petition was "baseless" and "not supported by caselaw" for several reasons. First, the letter contends that Healey's February 9 declaration "appears to be based on out of court statements to Mr. Healey to which he attests . . . without laying any foundation. As such, Mr. Healey's statement . . . is inadmissible hearsay, lacks foundation, and constitutes a legal conclusion. (Evid. Code, §§ 1200 and 1271.)" Second, respondent argued that the petition "fails to provide any

---

[1] All subsequent references to dates are to the year 2022, unless otherwise indicated.

admissible evidence that [he] either signed an arbitration agreement or authorized anyone on his behalf to sign such an agreement." To this end, he noted that he "did not sign" the agreements cited by respondent, and that the petition "does not state the identity of the individual who signed the Arbitration Agreement(s), nor does it provide any insight on the nature of the relationship between [respondent] and" that individual.

Two weeks after respondent sent that letter, appellants filed a second declaration made by Healey on March 4, along with four exhibits: (1) excerpts of respondent's records from the appellant nursing center; (2) some of respondent's medical records, made prior to his admission to the nursing center; (3) a power of attorney pertaining to respondent, made after the putative arbitration agreements were signed; and (4) appellant's reply to respondent's meet-and-confer letter. In the March 4 affidavit, Healey declared that it "is [appellants'] understanding that the Arbitration Agreement was executed by Angel Davis (the wife or former wife of [respondent])." According to Healey, Davis "is designated as [respondent's] agent" in the power of attorney, and Davis executed both the do-not-resuscitate form (included in the medical records) and "the residence Agreement to [appellants'] community." Healey argued that it would be "counterintuitive to claim [Davis] had the power to decide whether [respondent] lives or dies but not the power to execute the subject [Arbitration] Agreement." The affidavit also highlights a portion of the attached medical records, wherein respondent ostensibly "stated that Ms. Davis was to be his healthcare decision maker."

The following week, respondent filed his opposition to the petition. There, he contended that appellants had "not provided any admissible evidence that [respondent], who is blind ever signed or is a party to any

3

arbitration agreements. In fact, the documents" appellants attached "to their moving papers do not mention [respondent] or identify who signed the agreement." The opposition was accompanied by respondent's own declaration, in which he disclaimed any knowledge of "what an arbitration is." Respondent continued: "I have never read or known anything about any Arbitration Agreement. I have never authorized anyone to sign any Arbitration Agreement for me."

In separate filings, respondent also objected to the February 9 and March 4 declarations. He noted a lack of foundation for the February 9 declaration, reiterating the "foundation" objection he had made in the meet-and-confer letter. As for the March 4 declaration, it was "not filed or served in conformity with" Code of Civil Procedure sections 1290.6 and 1005, subdivision (b), and thus, "impermissibly attempts to place evidence before this Court."

Appellants filed a reply to respondent's opposition, attaching an affidavit from appellant William Shields and an admission agreement bearing respondent's name along with the name and signature of Angel Davis, designated therein as the "Resident's Representative." After a contested hearing, the trial court denied the petition to compel arbitration, holding that appellants had "not met their burden to establish the existence of an enforceable arbitration agreement." Appellants' objections to both declarations were sustained. According to the trial court, the "evidence lacks authentication and foundation, and contains hearsay and legal conclusions." Moreover, the trial court ruled that the "power of attorney signed" after the purported execution of the arbitration agreements was "irrelevant," and observed that the March 4 declaration was "filed later than permitted by Code of Civil Procedure [section] 1005," subdivision (b).

4

This appeal followed.

## II. DISCUSSION

## A. The Rulings on Respondent's Evidentiary Objections

Appellants argue that the trial court abused its discretion in sustaining respondent's objections to Healey's February 9 and March 4 declarations. We do not reach the question concerning the February 9 declaration and we find no abuse of discretion as to the March 4 declaration. We explain below.

### 1. *February 9 Declaration*

Healey's affidavit of February 9 included copies of two purported Arbitration Agreements "pertaining to" respondent. Said documents were executed on behalf of the respondent by Angel Davis, who was listed as the "Responsible Party." Respondent objected to this declaration noting a "lack of foundation." The trial court agreed. As we explain in a subsequent section of this opinion, even when considering the contents of this declaration along with its attendant evidence, there was no error in the trial court's denial of appellants' motion to compel arbitration. Thus, we need not reach the question of abuse of discretion as it relates to the trial court's decision to sustain respondent's objection to the February 9 declaration.

### 2. *March 4 Declaration*

As for the trial court's ruling concerning the March 4 declaration, we find no reversible error.

"Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing." (Code Civ. Proc., § 1005, subd. (b).) Here, appellants filed the March 4 declaration a mere 13 court days before the March 23 hearing—"later than permitted by" statute, as the trial court correctly noted. Thus, because the March 4 declaration was not timely filed under the Code of

5

Civil Procedure, there was no abuse of discretion in the trial court's election not to consider the declaration's contents, regardless of the merits of respondent's objections under the Evidence Code.

Seeking to avoid this conclusion, appellants rely on *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*), in which our colleagues in the Second District found that a trial court abused its discretion in deeming a supplemental declaration untimely under the same section and subdivision of the Code of Civil Procedure. In *Espejo*, the arbitration agreement attached to the motion to compel arbitration bore Espejo's " 'electronic signature,' " and the supplemental declaration purported to authenticate that signature. (*Id.* at pp. 1052–53.) The Court of Appeal held that the declaration was timely because the "defendants were not required to establish the authenticity of Espejo's signature . . . until challenged by Espejo in his opposition." (*Id.* at p. 1060.)

That determination rested on the *Espejo* court's holding that the party seeking to compel arbitration may meet its initial "burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature." (*Ibid.*) Here, the arbitration agreement attached to appellants' petition did not bear the opposing party's signature, even purportedly. For that reason, *Espejo* has no relevance to the question considered here.[2]

---

[2] Similarly inapposite are appellants' citations to *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, reversing a trial court's denial of a petition to compel arbitration. In *Condee*—even though the "signature's authenticity . . . was never challenged"—the trial court "denied the petitions to compel for failure to authenticate the arbitration agreement." (Id. at p. 218.) Here, the dispositive question is not whether Angel Davis actually signed the agreement, but rather, whether Angel Davis signed on respondent's behalf (and had the authority to do so).

In sum, with respect to the trial court's rulings on respondent's objections to the February 9 and March 4 declarations, we do not reach the former and we find no reversible error as to the latter.

## B.  The Denial of Appellants' Motion to Compel Arbitration

Appellants argue that the trial court erred in finding that they had "failed to meet their burden to establish the existence of an enforceable arbitration agreement," contending in turn that "the arbitration agreement" should "have been enforced because Angel Davis had actual or ostensible authority to execute it on [respondent's] behalf."  We disagree.

### 1.  *Applicable Law and Standard of Review*

Code of Civil Procedure "sections 1281.2 and 1290.2 create a summary procedure for resolving . . . petitions" to compel arbitration upon submitted evidence.  (*Engalla v. Permanente Medical Group, Inc.* (1997), 972.)  When a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the trial court must determine whether an agreement to arbitrate exists and, if any defense to its enforcement is raised, whether the agreement is enforceable. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence.  (*Ibid.*; *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586.)  "The trial court sits as a trier of facts, weighing all of the evidence submitted to reach a final determination."  (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1072.)

"Where, as here, an appeal from a denial of a motion to arbitrate turns on disputed facts, we review the trial court's ruling for substantial evidence. (*Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2018)

7

30 Cal.App.5th 970[].)  Under this standard, ' " 'we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence.' " ' " (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 544–45 (*Bannister*).)[3]

### 2. *Substantial Evidence Supporting the Order*

"Generally, a person who is not a party to an arbitration agreement is not bound by it." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587 (*Flores*).)  "However, there are exceptions.  For example, a *patient* who signs an arbitration agreement at a health care facility can bind relatives who present claims arising from the patient's treatment." (*Ibid.*)  "Further, a person who is authorized to act as the patient's *agent* can bind the patient to an arbitration agreement." (*Ibid.*)

Here, the parties agree that respondent did not sign the documents in question.  Instead, appellants assert that Angel Davis had the authority to sign on his behalf.  In response and contrary to said assertion, respondent declared in a sworn affidavit:  "I do not know what an arbitration is.  I have never read or known anything about any Arbitration Agreement.  I have never authorized anyone to sign any Arbitration Agreement for me."  Without

---

[3] Like Bannister noted in his own opposition, respondent observes that "some courts have held that '[w]hen . . . the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law.' " (*Bannister*, *supra*, 64 Cal.App.5th at p. 545, fn. 1, quoting *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.)  As we did in *Bannister*, we conclude here that "the outcome is the same whether we apply this standard or the substantial evidence standard, [so] we need not address the appropriateness of this standard here." (*Ibid.*)

considering the untimely March 4 declaration[4], appellants' evidence is composed of an arbitration agreement that does not mention respondent, an affidavit of February 9 in which appellant's attorney simply asserts that the agreement "pertain[s] to" respondent, and an admission agreement that bears both respondent's name and the signature of Angel Davis as the "Resident's Representative."

The record summarized above furnishes little to no evidence that Davis was "authorized to act as" respondent's "*agent*." (*Flores, supra*, 148 Cal.App.4th at p. 587.) Rather, respondent's declaration supports a reasonable inference that she was not authorized to do so. Thus, under the standard of review operative here, we resolve the apparent conflict in the evidence in favor of the trial court's ruling. (See *Bannister, supra*, 64 Cal.App.5th at pp. 544–545.)

In sum, substantial evidence supports the trial court's denial of appellants' motion to compel arbitration.

### III. DISPOSITION

We affirm.

---

[4] As previously noted in Section A above, this court finds no abuse of discretion in the trial court's election not to consider the contents of the March 4 declaration.

_____

Langhorne, J. [*]


We concur:


_____

Jackson, P.J.


_____

Burns, J.


*O'Cain v. Shields Nursing Center, Inc.* / A165055

---

[*] Judge of the Superior Court of Napa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.