Filed 1/19/21  Davies v. Fountaingrove Lodge CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| JUNE DAVIES, an Incompetent Person, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> FOUNTAINGROVE LODGE, LLC, et al., <br><br>     Defendants and Appellants. | A160522 <br><br> (Sonoma County <br> Super. Ct. No. SCV265963) |

This case concerns an appeal from an order denying a motion to dismiss or, in the alternative, to compel arbitration.  Plaintiff and respondent June Davies was admitted to the memory care unit of appellant's residential care facility.[1]  The "Residence and Services Agreement" (the Residence Agreement) between the parties was signed for Davies by Jolynn Lima.  This agreement requires informal dispute resolution and arbitration.  Without fulfilling these requirements, Davies filed a complaint against Oakmont.

---

[1] Appellants are Fountaingrove Lodge, LLC, Oakmont Senior Living, LLC, and Oakmont Management Group, LLC (collectively, Oakmont). Fountaingrove Lodge is the particular facility at issue, and its memory care unit is called The Terraces.

1

Oakmont appeals the trial court's denial of its motion to dismiss that complaint or, in the alternative, to compel arbitration. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2016, Davies was admitted to Fountaingrove Lodge, a residential care facility for the elderly in Santa Rosa, California. In November 2017, she was admitted to The Terraces, the memory care unit of Fountaingrove Lodge, where she remained until September 2019.

In November 2017, Lima signed the Residence Agreement for The Terraces.[2] In doing so, Lima identified herself as the holder of Davies's financial power of attorney. Although evidence of the exact scope of her authority was never presented to the trial court (a circumstance we discuss below), the parties do not dispute the general characterization that Lima held a financial power of attorney, and not one denominated as a health care power of attorney.

The Residence Agreement includes an informal dispute resolution clause, which provides in part that if a dispute arises, "before taking any legal action, [the parties] will first meet and confer informally in good faith to try to resolve any such dispute." If this process failed, the parties agreed to submit the dispute to "formal non-binding mediation." The Residence Agreement also contains an arbitration clause providing in part that "[b]oth parties give up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration."

In February 2020, about five months after leaving the facility, Davies, acting by and through her guardian ad litem, Cynthia Kennedy, filed a

---

[2] The terms of the original agreement for placement at Fountaingrove Lodge in 2016 were not presented to the trial court, it is not part of the record on appeal, and the parties do not discuss it. We presume this other agreement, if there was one, is not material to the questions we address.

complaint alleging causes of action including negligence and elder neglect. Kennedy was also the holder of Davies's health care power of attorney. Oakmont moved to dismiss or, in the alternative, to compel arbitration based on the informal dispute resolution and arbitration provisions in the Residence Agreement.

Davies opposed the motion relying on *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937, 957 (*Hutcheson*), which holds that admission to the residential care facility at issue was a "health care decision" under the Health Care Decisions Law, Probate Code section 4600 et seq. Below, Davies argued that her admission to The Terraces was a health care decision, and, as a result, the arbitration agreement is not enforceable because Kennedy—not Lima—is authorized to make health care decisions for Davies.[3]

Oakmont did not have an opportunity to file a reply brief because the trial court was closed in the spring of 2020 due to the COVID-19 pandemic. After it resumed operations, the trial court held a hearing on the motion. The trial court acknowledged Oakmont had no opportunity to reply, but assumed it would "get any sort of argument or additional authority cited at oral argument." Prior to the hearing, the court issued a tentative decision denying the motion and saying, in part: "Defendants make no effort to

---

[3] In *Hutcheson*, *supra*, 17 Cal.App.5th at pages 949 to 950, the court found that admission to the residential care facility at issue was a health care decision in part because the facility "agreed to provide dementia care as part of its custodial care." Here, the record indicates The Terraces is the facility's memory care unit and its program "is designed for residents who have a diagnosis . . . of dementia or . . . [for whom] it has been determined that the services offered . . . are in the best interest of the resident." Services available included "dementia care." Accordingly, admission to The Terraces was a health care decision.

3

demonstrate that Lima had the power to make healthcare decisions for plaintiff."

At the hearing, Oakmont argued *Hutcheson* was distinguishable because, in *Hutcheson*, "the arbitration agreement was . . . entered into automatically when the admission agreement was executed," but, in Davies's agreement, "the arbitration agreement was not something that was necessary or part and parcel of the admission agreement. It was something that could be voluntarily entered into or not entered into by the person who signed for the resident. In this case, the person who signed was a financial power of attorney and she did decide to enter into that arbitration agreement." According to Oakmont, "the arbitration agreement standing alone is not the healthcare decision," and was more akin to a financial decision. Oakmont never contended that Lima had the authority to make a health care decision.

After hearing the parties' arguments, the trial court denied the motion reiterating that Oakmont made "no effort to demonstrate that Lima had the power to make healthcare decisions for" Davies, and, as a result, "the arbitration agreement is void." Oakmont filed a timely notice of appeal.

DISCUSSION

On appeal, Oakmont makes three arguments. First, based on the specific language of Davies's financial power of attorney (POA), Oakmont contends Lima had actual authority to enter into contracts with nursing homes and similar establishments. Second, Oakmont argues Lima had ostensible authority to sign the Residence Agreement. Third, Oakmont claims that even if Lima's execution of the Residence Agreement is not enforceable, her execution of the arbitration provision therein remains valid and enforceable. We disagree and affirm.

4

I.      *Standard of Review*

Under federal and California law, there is a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 681–683; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) "Even so, parties can only be compelled to arbitrate when they have agreed to do so. [Citation.] 'Arbitration . . . is a matter of consent, not coercion.' " (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512 [" '[e]ven the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement' "].) The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263.)

II.      *Actual Authority*

Oakmont's first argument is that, according to the language of the financial POA, Lima had actual authority to contract with nursing homes or similar establishments and, thus, had the authority to sign the Residence Agreement. This argument was not made in the trial court, and it is based on a document—the financial POA—that Oakmont did not even present to the trial court. Oakmont requests we take judicial notice of it in the first instance. Davies opposes the request.

We deny the request for judicial notice because the financial POA was not presented below. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325–326 ["An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance."];

5

*DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863 [" '[A]s a general rule, the court should not take [judicial] notice if, upon examination of the entire record, it appears that the matter has not been presented to and considered by the trial court in the first instance.' "].) Although reviewing courts may "take evidence relating to any facts occurring at any time prior to appeal," this rule "is not available where there is no good cause shown for the unavailability of the evidence below." (*DeYoung,* at p. 863, fn. 3.)

Here, Oakmont claims good cause for failing to present the financial POA below because COVID-19 restrictions made it impossible to file a reply brief. Oakmont asserts "[t]he reply would have been the instance where presenting [the financial POA] to the trial court would have occurred." But the record indicates Oakmont obtained a copy of the financial POA in March 2020, over three months before the July hearing on the motion to compel arbitration. Oakmont does not explain why it failed to offer a copy of the financial POA into evidence at the hearing, or make any reference to it or its terms. Having failed to show good cause, we deny Oakmont's request for judicial notice of the financial POA, and we decline to consider Oakmont's argument that relies on its terms. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [" 'points not urged in the trial court may not be advanced on appeal' "]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' "].)

Even considering the argument, Oakmont's assertion that Lima had actual authority to sign the Residence Agreement fails. The proffered financial POA provides, in section 4.01, that Lima has the power to "[m]ake

6

all necessary arrangements, contractual or otherwise, for [Davies's] care at any hospital, hospice, nursing home, convalescent home or similar establishment." Based on this provision, Oakmont contends that Lima was authorized to contract with it because it operates a nursing home or similar establishment.

However, in opposition to Oakmont's motion to compel arbitration, Davies filed a declaration from Kennedy and a copy of Davies's "Advance Health Care Directive," which identifies Kennedy as her agent for health care decisions. This health care POA is dated November 2015, about four months prior to Davies's admission to Oakmont's facilities. As part of the admission process, Kennedy identified herself to Oakmont as Davies's "agent for health care decisions," and she gave them a copy of the health care POA. Kennedy avers the staff treated her as Davies's agent for health care decisions, including when Davies was moved to The Terraces in November 2017. Oakmont does not dispute this evidence.[4]

---

[4] At oral argument, Oakmont relied on Kennedy's declaration (filed below in opposition to its motion to compel arbitration) to argue Kennedy participated in, and consented to, Davies's transfer to the memory care unit, even if Kennedy did not sign the Residence Agreement. We could decline to consider this argument because it was not made in Oakmont's appellate briefs. Indeed, Oakmont did not even include Kennedy's declaration in the appellant's appendix. But even considering the argument, it does not establish that Lima, the person who did sign the Residence Agreement on Davies's behalf, had authority to do so. Kennedy signed three of numerous documents appended to the Residence Agreement. One of these indicates Davies did not wish to be resuscitated in the event of a medical emergency. Another, which describes "Residents Rights," was signed by both Lima and Kennedy. These facts hurt rather than help Oakmont's case. If Kennedy was present or available when Lima signed the Residence Agreement, then why didn't Oakmont require that both Lima and Kennedy sign it? Indeed, the signature page of the Residence Agreement contains signature lines for two representatives of the resident, but only Lima signed it on behalf of Davies.

Section 4685 of the Probate Code provides that "[u]nless the power of attorney for health care provides otherwise, the agent designated in the power of attorney who is known to the health care provider to be reasonably available and willing to make health care decisions has priority over any other person in making health care decisions for the principal."

Here, Oakmont was aware that Kennedy was Davies's agent for health care decisions, and the record indicates she was available and willing to make such decisions. The decision to admit Davies to The Terraces was a health care decision, and Kennedy had priority in making heath care decisions. Therefore, any authority Lima might have had to sign the agreement was superseded or trumped by Kennedy's authority. (*Hutcheson*, *supra*, 17 Cal.App.5th at p. 956 ["[A] person named as an attorney in fact in a health care POA may not necessarily have exclusive authority to make health care decisions on behalf of her principal. But such an attorney in fact 'has priority over any other person in making health care decisions' for the resident so long as the attorney in fact 'is known to the health care provider to be reasonably available and willing to make health care decisions.' "].)

III.   *Ostensible Authority*

Next, Oakmont claims Lima "had at least ostensible authority to sign the Residence Agreement." "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be [her] agent . . . ." (Civ. Code, § 2300.) Based on the terms of the financial POA, Oakmont contends it was "justified and not negligent in believing Lima had the authority to sign the Residence Agreement."

For the reasons explained *ante*, we certainly could decline to consider this argument, which was not made below, and which relies on the terms of the financial POA, a document not presented below. (See, e.g., *In re Zeth S.*,

8

*supra*, 31 Cal.4th at p. 405.) But even considered on its merits, we are not persuaded Lima had ostensible authority.

" '[A]n agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency.' " (*Hutcheson, supra*, 17 Cal.App.5th at p. 958.) Ostensible agency requires " ' "some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons." ' " (*Ibid.*; *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 745 [affirming denial of petition to compel arbitration because appellants failed to show patient, through his conduct, conferred authority on family members to execute arbitration agreements].)

Here, Oakmont identifies no facts showing Davies intentionally or negligently caused it to believe Lima was her agent for health care decisions. Oakmont claims Davies "held out Lima as her agent empowered to enter into the Residence Agreement." But its only support for this claim is the fact that Lima executed the Residence Agreement. This fact is insufficient to establish intentional conduct or neglect on the part of the principal, Davies. (*Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 [rejecting nursing home's contention that daughters' act of signing agreements created agency status and explaining that conduct by the principal was necessary].) Furthermore, the record suggests that Oakmont did not have a copy of the financial POA, which contains the language that is arguably the basis of Lima's broader ostensible authority, until after this lawsuit was filed.

Finally, a third person dealing with the agent " 'takes the risk not only of ascertaining whether the person with whom he [or she] is dealing is the

9

agent, but also of ascertaining the scope of his [or her] powers.'" (*Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1134.) Here, even though Oakmont was aware that Kennedy was Davies's agent for health care decisions, and that Lima purported to be Davies's agent for financial decisions, there is nothing in the record to indicate Oakmont took steps to ascertain the scope of Lima's powers. Of course, had it done so, Probate Code section 4685 would have required Oakmont to seek Kennedy's superseding consent. At best, Lima's ostensible authority could not trump Kennedy's authority as Davies's agent under the health care POA. Consequently, Oakmont's theory of ostensible authority fails.

IV.     *Separability of the Arbitration Clause*

Oakmont contends we should "analyze enforceability of the arbitration agreement separately from the admission agreement." Oakmont claims that "even if it is found that Lima did not have authority to sign the Residence Agreement because that was a healthcare decision . . . her execution of the arbitration agreement is valid."

In making this argument, Oakmont relies primarily on *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 594, and *Young v. Horizon West, Inc.*, *supra*, 220 Cal.App.4th at p. 1129. Both of these cases affirmed the denial of motions to compel arbitration, and they stand for the proposition that the power to make a health care decision does not necessarily include the power to agree to arbitrate a dispute arising from the provision of health care. (*Flores*, at pp. 592–594; *Young*, at p. 1129.) But here Oakmont seeks to reverse this principle, arguing Lima had the power to bind Davies to arbitration even if she did not have the power to make health care decisions for Davies.

10

"Both federal and California law now hold that, in the absence of a specific attack on an arbitration agreement, such agreement generally must be enforced even if one party asserts the invalidity of the contract that contains it." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1198.) However, "[i]f a party can show that it did not know it was signing a contract, or that it did not enter into a contract at all, both the contract and its arbitration clause are void for lack of mutual assent." (*Id.* at p. 1200.)

The court in *St. Agnes Medical Center* cited its discussion in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394. In *Rosenthal*, the question of the enforceability of an arbitration clause turned on whether the underlying contract was alleged to be void because of "fraud in the execution," or merely voidable because of "fraud in the inducement." (*Id.* at pp. 415–417.) In the former circumstance, no contract would exist *ab initio* and, thus, any arbitration clause contained therein would be unenforceable. (*Id.* at p. 416.)

These cases are consistent with the strong public policy in favor of arbitration, but only to the extent the agreement to arbitrate reflects the mutual consent of the parties. (*Avila v. Southern California Specialty Care, Inc., supra,* 20 Cal.App.5th at p. 843.) Where no agreement was reached in the first instance, neither a contract purporting to represent that agreement nor its provisions are enforceable. (See, e.g., *Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.* (9th Cir. 1991) 925 F.2d 1136, 1138 [party resisting arbitration claimed contract was invalid because unauthorized individual signed it].)

That is the situation before us. Oakmont knew Kennedy was available and willing to make health care decisions for Davies, but Oakmont relied on

11

Lima to sign the Residence Agreement including its arbitration clause. Under Probate Code section 4685, Kennedy had priority regarding health care decisions, and, under *Hutcheson, supra*, 17 Cal.App.5th at pages 945 to 957, admission to a facility like The Terraces is a health care decision. Because Kennedy should have executed the Residence Agreement, "both the contract and its arbitration clause are void for lack of mutual assent." (*St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at p. 1200.) Oakmont's attempt to enforce the arbitration agreement fails.[5]

Oakmont's final argument is that the complaint should be dismissed because Davies did not follow the "contractually-mandated" alternative dispute resolution procedures. Having found that the contract is void because Kennedy should have executed it, we reject the argument.

---

[5] Davies claims the trial court determined "the arbitration agreement was void," but it "did not issue a ruling as to the validity of the Residence Agreement as a whole." Whether or not the trial court did so, we conclude the agreement as a whole is void. The California Law Revision Commission sponsored the bill that enacted Probate Code section 4685, which is part of the Health Care Decisions Law. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 891 (1999–2000 Reg. Sess.) as amended Apr. 15, 1999, p. 5.) According to its sponsor, the bill's guiding principle is " 'to effectuate the stated desires of the patient, as set out in an advance directive or, in the absence of such a directive, as expressed by the patient to authorized surrogate decisionmakers.' " (*Ibid.*) The parties do not dispute that executing the agreement for admission to The Terraces was a health care decision. In determining this agreement is void, we effectuate the desires of Davies, who designated Kennedy as her agent for health care decisions in an advance directive. Moreover, the requirement to respect Kennedy's "priority over any other person in making health care decisions" derives in part from the nature of such decisions, which generally "cannot be parceled out" among different decisionmakers. (Recommendation: Health Care Decisions for Adults Without Decisionmaking Capacity (Dec. 1998) 29 Cal. Law Revision Com. Rep. (1999) p. 31.)

## DISPOSITION

We affirm the order denying the motion to dismiss or, in the alternative, to compel arbitration. Davies is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____
Reardon, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Burns, J.


A160522

_____

&ast; Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.