Filed 10/30/23  Blackmon v. Vernon Healthcare Center CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBRA ANN BLACKMON, | B321557 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. 21STCV18794 |
| VERNON HEALTHCARE CENTER, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge. Affirmed.

Cowdrey Jenkins and Sean D. Cowdrey for Defendants and Appellants.

Moran Law, Michael F. Moran, Lisa Trinh Flint, and Suzan N. Tran for Plaintiff and Respondent.

## INTRODUCTION

Defendants Vernon Healthcare Center, LLC, dba Vernon Healthcare Center, Rockport Administrative Services, LLC, Brius Management Co., and Shlomo Rechnitz (collectively, Vernon) appeal from the trial court's order denying their motion to compel arbitration of elder abuse and related claims brought by plaintiff Debra Ann Blackmon, through a guardian ad litem, based on the care Blackmon received at one of Vernon's skilled nursing facilities. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Blackmon was admitted to Vernon's skilled nursing facility (Facility) on October 15, 2020, when she was 65 years old. At the time of her admission, Blackmon suffered from dementia and diabetes and had recently suffered a "cognitive decline." Blackmon needed assistance with daily activities, and she "was not always able to make her needs known, could not always recount her medical history, did not have the ability to understand and be understood at all times, and required frequent supervision."

Blackmon's son, Eric Vallin,[1] accompanied Blackmon when she was admitted to the Facility, and he signed all of her admission paperwork as her "Representative" or "Legal Representative." A staff member reviewed the paperwork with Vallin, briefly describing each document and showing Vallin where to sign. Although Blackmon was present, she didn't say anything before or after Vallin signed the paperwork, nor did the

---

[1] Vallin's name also appears as "Eric Blackmon" in parts of the record.

staff member ask Blackmon whether "it was okay" for Vallin to sign the paperwork. Blackmon did not sign any paperwork before she was admitted to the Facility.

On October 23, 2020, Vallin returned to the Facility to sign additional paperwork. Vallin met the same staff member who reviewed Blackmon's initial admission paperwork. The staff member presented a stack of documents, which she told Vallin he needed to sign so that Blackmon could remain at the Facility. The staff member did not discuss the contents of any of the documents with Vallin. She flipped through each document and "pointed her finger" to show Vallin where he needed to sign. Vallin signed all the documents. Blackmon wasn't present when Vallin signed the documents, nor did she ever sign any of them.

Among the documents Vallin signed on October 23, 2020 was an arbitration agreement (Agreement). The first page of the Agreement states that it is not part of the Facility's admission agreement and that residents are not required to sign the Agreement as a condition to admission to the Facility. The Agreement includes an acknowledgment provision, which states that the Agreement and the resident's admission agreement "evidence a transaction in interstate commerce governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16." The Agreement also includes a choice of law provision, stating the Agreement "shall be construed and enforced in accordance with and governed by the Federal Arbitration Act and the procedures set forth in the Federal Arbitration Act shall govern any petition to compel arbitration."

Articles 1.1 and 1.2 of the Agreement provide that the parties agree to arbitrate any "medical malpractice" disputes as well as "all other disputes, controversies, demands or claims that

relate [to] or arise out of the provision of services or health care or any failure to provide services or health care by Facility, the admission agreement and/or this Agreement, the validity interpretation, construction, performance and enforcement thereof, including, without limitation, claims that allege," among other things, "negligence," violations of "Health and Safety Code section 1430," and "violations of the Elder Abuse and Dependent Adult Civil Protection Act." Article 1.6 includes a delegation clause, which states: "The arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable."

The Agreement's signature page includes a paragraph that appears immediately above Vallin's signature, which states: "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing and delivering of this Arbitration Agreement. I acknowledge that the Facility is relying on this representation. I also acknowledge that pursuant to the terms of this Agreement, any claims that I may assert in my personal capacity that arise out of or relate to any provision of or failure to provide services (medical or otherwise) or goods by the Facility to the Resident or the admission agreement are governed by this Arbitration Agreement."

In May 2021, Blackmon, through a guardian ad litem, filed a complaint against Vernon for elder abuse, negligence, violation of Health and Safety Code section 1430, and willful misconduct. Blackmon alleged that while she was a resident at the Facility,

4

Vernon neglected her physical health and failed to administer reasonable care, causing her to become "dehydrated, malnourished, and to develop severe hyperglycemia and severe diabetic ketoacidosis, resulting in significant pain and suffering, generalized weakness, dysphagia, and an overall deterioration in her physical and mental condition."

Vernon filed a motion to compel arbitration, arguing all of Blackmon's claims are subject to arbitration under the Agreement. According to Vernon, Vallin was acting as Blackmon's agent when he signed the Agreement, thereby binding Blackmon to its terms. In any event, Vernon argued, the Agreement's delegation clause required the court to submit to an arbitrator the question of whether Vallin was authorized to bind Blackmon to arbitration.

In support of their motion, Vernon submitted a declaration executed by Jasmine Urdaneta, the Facility's former Admissions Director. Urdaneta went through Blackmon's admission paperwork with Blackmon and Vallin when Blackmon was admitted to the Facility. Although Vallin signed Blackmon's paperwork, including the Agreement, Urdaneta did not recall Blackmon "communicating that she did not authorize her son to sign agreements on her behalf, nor did [Blackmon] object to being admitted to the [F]acility."

Blackmon opposed Vernon's motion. She argued she was not a party to the Agreement because she never signed it and Vallin was not her agent when he signed it, nor was he otherwise authorized to bind her to the Agreement's terms. In support of her motion, Blackmon submitted Vallin's declaration, in which he testified that he never spoke with Blackmon before signing the Agreement or otherwise obtained her consent to sign it on her

5

behalf. Vallin also testified that he did not hold a "Durable Power of Attorney" for Blackmon, nor was he Blackmon's legal guardian or conservator, when he signed the Agreement.

The court denied Vernon's motion. It found Vernon failed to prove Blackmon agreed to arbitrate any disputes arising out of her residency at the Facility. Specifically, the court reasoned, Vernon presented no evidence that Blackmon engaged in any "conduct [that] created an agency relationship" between herself and Vallin.

Vernon appeals.

## DISCUSSION

Vernon contends the court erred in denying the motion to compel arbitration because (1) the Agreement requires an arbitrator, and not the court, to determine issues of arbitrability, such as whether Blackmon agreed to arbitrate any disputes with Vernon; and (2) Vallin was acting as Blackmon's agent when he signed the Agreement, thereby requiring Blackmon to arbitrate her claims. As we explain, each of these arguments lacks merit.

### 1. Standard of Review and Applicable Law

The party seeking to compel arbitration bears the burden of proving a valid arbitration agreement exists. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) The court resolves a motion to compel arbitration in a summary setting, sitting " 'as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164; see also Code Civ. Proc., § 1290.2.) In determining whether a valid arbitration agreement exists, the court applies California law concerning the formation, revocation, and enforcement of

6

contracts (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60), even if the challenged agreement would fall within the scope of the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357 ["the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally"].)

We typically review a court's order denying a motion to compel arbitration for abuse of discretion, unless the appeal raises only a pure question of law, in which case we apply a de novo standard of review. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.) We review the court's factual conclusions under the substantial evidence standard. (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317.) But if the trier of fact finds the moving party did not prove the existence of a valid arbitration agreement, and that party appeals, the question on appeal becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (*Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744.) Specifically, we must determine whether the evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. (*Ibid.*)

2. **The court properly decided whether Blackmon was a party to the Agreement.**

Vernon does not dispute that Vallin, and not Blackmon, signed the Agreement. Thus, for Blackmon to be a party to the Agreement, Vallin must have had the authority to agree to arbitration on her behalf. According to Vernon, this question is

7

one for the arbitrator because the Agreement includes a delegation clause requiring an arbitrator to resolve issues of arbitrability, such as those "relating to the interpretation, applicability, enforceability, or formation of [the] Agreement." We disagree.

Although California and federal law favor arbitration, that policy does not apply to claims brought by someone who is not a party to an arbitration agreement. (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 31.) That is because the right to compel arbitration depends upon the existence of a valid arbitration agreement between the parties. (*Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1202.) Thus, a party "cannot be compelled to arbitrate a dispute if they have not agreed to do so, and no statute compels them to arbitrate." (*Ibid.*)

Just like any other term in an arbitration agreement, a delegation clause requiring the parties to arbitrate issues of arbitrability may only be enforced against someone who has agreed to be bound by it. (*Theresa D. v. MBK Senior Living LLC* (2021) 73 Cal.App.5th 18, 25–27 (*Theresa D.*).) Consequently, before enforcing a delegation clause, the court must first determine whether the plaintiff is a party to the underlying arbitration agreement. (*Ibid.*)

Because Blackmon didn't sign the Agreement, and she contends she never authorized Vallin or any other third party to bind her to arbitration with Vernon, the court, and not an arbitrator, was required to determine in the first instance whether Vernon could enforce any of the Agreement's terms, including its delegation clause, against Blackmon. (*Theresa D.*,

8

*supra*, 73 Cal.App.5th at p. 27; see also *Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469 [" 'The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance' "].)

Relying on *Rent-A-Center West, Inc. v. Jackson* (2010) 56 U.S. 63, 65 (*Rent-A-Center*), Vernon argues the court was required to enforce the Agreement's delegation clause once Vernon submitted evidence of the Agreement and "met its burden authenticating it," regardless of who signed it. In *Rent-A-Center*, the United States Supreme Court addressed whether, under the FAA, a court could decide if an arbitration agreement was unconscionable where the agreement included a clause delegating that specific question to the arbitrator. (*Rent-A-Center*, at p. 65.) The arbitration agreement between the plaintiff and his employer in that case included a delegation clause identical to the one in this case. (*Id.* at p. 66.) In opposing arbitration, the plaintiff argued the agreement as a whole was unconscionable without specifically challenging the validity of the delegation clause. (*Id.* at pp. 71–73.) The Court concluded the delegation clause was severable from the rest of the arbitration agreement and, without specifically challenging that clause, the plaintiff was required to submit to the arbitrator the question of whether the arbitration agreement was unconscionable. (*Id.* at pp. 72–76.)

Vallin's reliance on *Rent-A-Center* is misplaced. Unlike Blackmon, the plaintiff in *Rent-A-Center* didn't dispute that he signed the underlying arbitration agreement or that he was otherwise a party to it. (See *Rent-A-Center*, *supra*, 56 U.S. at pp. 65–76.) Thus, the Court in *Rent-A-Center* never considered the issue before us—whether an arbitration agreement's delegation

9

clause may be enforced against a plaintiff who didn't sign the arbitration agreement and argues she never otherwise agreed to be bound by that agreement. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243 ["an opinion is not authority for an issue not considered therein"].)

Nor do any of the other cases that Vernon cites support its position, as none of them addressed whether a party may be bound by a delegation clause before it has been established the plaintiff signed, or otherwise agreed to be bound by, an arbitration agreement containing such a clause. (See *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 237, 241–250 [requiring plaintiff who signed arbitration agreement that included delegation clause to submit to arbitrator issues concerning the agreement's conscionability]; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 781–794 [declining to enforce delegation clause for lack of clear and unmistakable evidence of parties' intent to submit issue of unconscionability to arbitrator]; *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 984, 986–988 [requiring plaintiff who entered into an arbitration agreement to arbitrate issues of arbitrability under the agreement's delegation clause].)

3. **Vernon failed to prove Vallin was authorized to agree to arbitration on Blackmon's behalf.**

Vernon next contends the court erred in denying the motion to compel arbitration because Vallin was acting as Blackmon's agent when he signed the Agreement, thereby requiring her to arbitrate her claims arising out of her residency at the Facility. Once again, we disagree.

10

Generally, a person who is not a party to an arbitration agreement is not bound by it. (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1074 (*Rogers*).) One exception exists where a person who is authorized to act as the plaintiff's agent binds the plaintiff to an arbitration agreement. (*Ibid.*)

An agent is someone who represents another—the principal—in dealings with third parties. (Civ. Code, § 2295.) An agency can be "actual" or "ostensible." (*Id.,* § 2298.) An actual agency exists when the agent is "really employed by the principal." (*Id.,* § 2299.) An actual agency is formed when the principal's conduct causes the agent to reasonably believe he is authorized to act on the principal's behalf. (*Rogers, supra,* 75 Cal.App.5th at p. 1074.) An ostensible agency arises when the principal intentionally, or through want of ordinary care, causes the third party to reasonably believe the agent is authorized to act on the principal's behalf. (*Ibid.*)

Whether actual or ostensible, an agency cannot be created by the agent alone. (*Rogers, supra,* 75 Cal.App.5th at p. 1074.) Rather, conduct by the principal is essential to create an agency relationship. (*Ibid.*) " ' " 'The principal must in some manner indicate that the agent is to act for [her], and the agent must act or agree to act on [her] behalf and subject to [her] control.' " ' " (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 588 (*Flores*).)

Vernon didn't present any evidence that Blackmon expressly authorized Vallin to act as her agent before he signed the Agreement. In fact, Vallin testified that he wasn't Blackmon's conservator or legal guardian, or acting under any power of attorney, when he signed the Agreement on Blackmon's behalf, and Vernon presented no evidence to the contrary. (See, e.g.,

11

*Gordon v. Atria Management Co., LLC* (2021) 70 Cal.App.5th 1020, 1026–1030 [adult child with power of attorney was authorized to enter into arbitration agreement on parent's behalf]; *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253 [same].)

Vernon argues the court should have inferred Vallin was Blackmon's agent because Vallin attested that he was "authorized to act as [Blackmon's] agent" when he signed the Agreement. But Vallin's conduct, by itself, is insufficient to create an agency relationship between Vallin and Blackmon. (*Rogers*, *supra*, 75 Cal.App.5th at p. 1074.) In any event, Vallin later testified that he never spoke to Blackmon about signing the Agreement or otherwise obtained her authorization to agree to arbitration on her behalf. (See *ibid.* [to form an actual agency, the principal's conduct must cause the agent to believe he is authorized to act on the principal's behalf].)

Vernon also contends Blackmon's conduct led Vernon to believe Vallin was her agent when he signed the Agreement because she "accepted [the Facility's] services provided to her for over one week before Vallin signed the [Agreement] on her behalf." We are not persuaded.

At the time Blackmon was admitted to the Facility, she suffered from dementia, had recently experienced "cognitive decline," and could no longer perform daily living activities on her own. Although Blackmon was present when Vallin signed her initial admission paperwork, she said nothing to Vallin or the Facility's representative or otherwise engaged in any affirmative conduct that would suggest she authorized Vallin to act as her agent. Several courts have held on similar facts that a resident's tacit acceptance of a skilled nursing facility's services is

12

insufficient to establish an agency relationship between the resident and a relative who signs an arbitration agreement when the resident is admitted to the facility.

For instance, in *Rogers*, surviving family members sued a skilled nursing facility for elder abuse and other claims arising out of the care it provided the decedent while he was a resident at the facility. (*Rogers*, *supra*, 75 Cal.App.5th at p. 1068.) The facility petitioned to compel arbitration, citing an arbitration agreement the decedent's son signed when the decedent was admitted to the facility. (*Id*. at pp. 1068–1070.) The trial court denied the facility's petition, finding the facility failed to prove the son was authorized to sign the arbitration agreement on the decedent's behalf. (*Id*. at p. 1072.)

The appellate court affirmed. (*Rogers*, *supra*, 75 Cal. App.5th at pp. 1073–1077.) It rejected the facility's argument that the son's apparent belief that he was authorized to sign the decedent's admission paperwork, including the arbitration agreement, established an agency relationship between the decedent and his son, since the purported agent's conduct "cannot create an agency relationship" by itself. (*Id*. at p. 1075.) The court also found there was no evidence that the decedent engaged in any conduct that could have led the facility to reasonably believe his son was authorized to sign an arbitration agreement on his behalf. (*Id*. at p. 1076.) The court explained that the decedent's failure to object to his son signing the arbitration agreement did not establish an agency relationship because there was no evidence that one of the facility's representatives spoke to the decedent about the agreement or that the decedent had previously authorized his son to sign similar agreements on his behalf. (*Ibid*.)

13

In *Flores*, the trial court denied a skilled nursing facility's motion to compel arbitration of claims brought by a resident and her husband. At the time the resident was admitted to the facility, she suffered from dementia and other ailments. (*Flores*, *supra*, 148 Cal.App.5th at p. 585.) The resident's husband signed her admission documents and a separate arbitration agreement. (*Ibid*.) On the arbitration agreement, the husband signed his name above a line designating him the resident's " 'Legal Rep/Responsible Party/Agent.' " (*Ibid*.) At the time the husband signed the admission documents and the arbitration agreement, he was not the resident's conservator or guardian, and he did not have power of attorney to act for her. (*Ibid*.)

The reviewing court affirmed the trial court's order denying the facility's motion to compel arbitration. (*Flores*, *supra*, 148 Cal.App.4th at pp. 587–589, 594.) The court reasoned that although the husband held himself out as the resident's agent, and the resident didn't disavow the facility's belief that her husband was her agent, the record was devoid of any evidence that the resident engaged in any affirmative conduct to reinforce such belief. (*Id*. at pp. 588–589.) Citing the fact that the resident suffered from "dementia and other ailments" at the time she was admitted to the facility, the court concluded the resident's mere acquiescence to receiving care from the facility, without more, was not sufficient to constitute intentional or negligent conduct that would cause the facility to reasonably believe she had authorized her husband to act as her agent. (*Ibid*.)

And in *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443 (*Warfield*), the plaintiff suffered from dementia and was no longer able to care for herself when she was admitted to a skilled nursing facility. (*Id*. at pp. 445–446.) The

14

plaintiff's husband, who was also a resident at the facility, signed the plaintiff's admission paperwork, including an arbitration agreement. (*Id.* at p. 446.) When the plaintiff later sued the facility for elder abuse claims, the facility petitioned to compel arbitration, arguing the husband executed the arbitration agreement on the plaintiff's behalf. (*Ibid.*) The trial court denied the facility's petition. (*Ibid.*)

The appellate court affirmed, rejecting the facility's argument that the plaintiff "acquiesced to her husband's representation as her agent" because she accepted her living arrangement with the facility and never objected to her husband signing her admission paperwork. (*Warfield*, *supra*, 158 Cal.App.4th at p. 448.) The court explained that "the failure of a resident suffering from dementia to object to the living arrangements her husband had made would hardly constitute evidence that she had authorized him to act as her agent in waiving her right to a jury trial." (*Ibid.*)

Here, Vernon proved nothing more than Blackmon's silent acceptance of nursing services at the Facility before Vallin signed the Agreement. But as the courts in *Rogers*, *Flores*, and *Warfield* explained, an ostensible agency cannot be created by mere silence or acquiescence by a resident, especially one suffering from dementia. Instead, it requires intentional or negligent conduct by the principal. (*Flores*, *supra*, 148 Cal.App.4th at p. 588.) Because nothing in the record compels, let alone supports, a finding that Blackmon intentionally or negligently engaged in any conduct that could cause Vernon to reasonably believe she authorized Vallin to agree to arbitrate her claims, the court properly denied Vernon's motion to compel arbitration.

15

## DISPOSITION

The order denying Vernon's motion to compel arbitration is affirmed. Blackmon shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


ADAMS, J.